J. C. DIXON et al., Appellants,

v.

G. K. BROOKS, a/k/a Mrs. J. B. Brooks, Appellee.

.No. A2344.

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 9, 1980.

Rehearing Denied July 30, 1980.

Monroe Northrop, Austin & Arnett, Houston, for appellants.

Thomas Lee Bartlett, Leonard Z. Finger, Finger, Burg, Smith & Cohen, Houston, for appellee.

Before BROWN, C. J., and MILLER and PAUL PRESSLER, JJ.

J. CURTISS BROWN, Chief Justice.

J. C. Dixon and his wife (appellants) sued G. K. Brooks (appellee) to recover damages and penalties in connection with the purchase of a house from appellee. Appellants made claims under the usury statutes, the Deceptive Trade Practices and Consumer Protection Act, the Debt Collection Act and for harassment. Brooks denied the allegations and counterclaimed for damages consisting of the arrears in payment under the contract for deed and for a declaratory judgment declaring the rights of the parties under the contract. After a trial to the Court, judgment was entered that appellants take nothing; that appellee recover $7,088.97, the amount of the delinquent payments under the contract; and that the contract was valid and had not been terminated at the time of trial. The trial court also ruled that if appellants did not correct the delinquency within a certain time, they would forfeit all right, title and interest in the property. Appellants have perfected this appeal.

On July 1, 1974, appellants and appellee entered into a contract for deed and a promissory note whereby appellants agreed to buy a house from appellee. At the time of the sale, the property was subject to a lien indebtedness, represented by two notes held by Lomas and Nettleton. The promissory note signed by appellants was payable to Mrs. Brooks in the amount of her equity in the house at 9½% per annum. Under the contract for deed, appellants would pay on the balance that Brooks still owed Lomas and Nettleton at the rate of 7½% per annum. The contract incorporated the requirement in the note that appellants make payments to be applied to appellee's equity. The trial court found that the terms of the contract prevailed over the terms of the note, which the court found to be surplusage. Appellants were also required to pay the taxes and insurance in the form of escrow payments included within the payments allocated to appellee's existing mortgage.

The contract for deed and the note in this transaction are inconsistent in several respects. The contract declared that in the event of default the interest of the purchaser in the property would be forfeited as liquidated damages. The note, on the other hand, authorizes the promisee, Brooks, to declare the entire amount due upon the failure of the promisor to make the installments, and to institute foreclosure proceedings. The note also provided that past due principal and interest shall bear interest at 10% per annum in addition to a late charge of 10% of the payment due. However, no one claims that the basic inconsistency be-

tween the contract and the note constitutes a failure of the meeting of the minds of the parties on a material matter so as to vitiate any contract. Therefore, it is not necessary to consider such a point.

We must next look at the operative provisions of the contract for deed. The contract states in part:

Purchaser agrees to send to seller on the 20th of each month $285.00 to apply on mortgage held by Lomas and Nettleton. This mortgage as of June 20, 1974, has a remaining balance of $25,991.75. The check will be made payable to Lomas and Nettleton and the first check will be due before July 1, 1974, and on the 20th of each month thereafter.

Also, purchaser will send a check with each of above mentioned checks made payable to Geneva Kirk Brooks, in the amount of $203.62 beginning October 1, 1974, and payable on the 20th of each month thereafter until the total equity of $19,508.25 has been paid at the rate of 9½ % per annum. Purchaser may pay on or before 15 years without penalty.

Any checks received by Geneva Kirk Brooks after the first day of the month will carry a late charge of 10%.

On several occasions appellants were more than ten days late in making their payments. Appellee demanded payment of these late charges and, in several instances, received such payments totaling $260.00 in all at the time of trial. Appellee also sent to appellants notices and letters threatening termination of the contract if the payments were not received, although she never carried through with these threats.

Appellants claim that the 10% late charge is usurious as a matter of law and under the facts of this case. They claim that the late charges were actually interest and were usurious as to the past due escrow payments and matured interest payments on the purchase money debt of their home.

The question before us is whether the late charge is interest and, if so, if such interest exceeds the 10% per annum allowed by law. Tex.Rev.Civ.Stat.Ann. arts. 5069–1.02, 5069–1.04 (Vernon 1971).

Article 5069–1.01, Tex.Rev.Civ. Stat.Ann. (Vernon 1971), defines interest as "the compensation allowed by law for the use or forbearance or detention of money . . . .." The supreme court has held that "[t]he detention of money arises in a case when a debt has become due, and the debtor withholds its payment, without a new contract giving him a right to do so." *Parks v. Lubbock*, 51 S.W. 322, 92 Tex. 635 (1899). Furthermore, when interest upon principal falls due, it is a new and separate debt, completely apart from the principal debt and for which interest may be charged at the maximum legal rate. *Wichita Falls Bldg. & Loan Ass'n v. Moss*, 82 S.W.2d 171 (Tex.Civ.App.–Fort Worth 1935, writ dism'd). Thus, the 10% late charge was the compensation for the detention of money, the matured interest, owed by appellants and as such, is interest. Moreover, "delinquency charges" on past due balances on a "running account" have been held to be interest within the meaning of the usury statutes. *Watson v. Cargill, Inc., Nutrena Division*, 573 S.W.2d 35 (Tex.Civ.App.– Waco 1978, writ ref'd n. r. e.).

Appellee claims that such late charges are not interest in that they were in the nature of a service charge intended to reimburse appellee for the time, expense and inconvenience incident to any delinquency, and not for compensation for the detention of money. This might be true were it not for the fact that the Legislature has excluded from the definition of interest such late charges in reference to various entities. Savings and Loan Associations are allowed to charge penalties for late payments without having such penalties being deemed interest. Tex.Rev.Civ.Stat. Ann. art. 852a, § 5.07 (Vernon 1964). If it were not for the statute, the late charges would be interest within the meaning of the usury statutes. *See Gonzales County Sav. & Loan Ass'n v. Freeman*, 534 S.W.2d 903 (Tex.Sup.1976). Since Mrs. Brooks is not covered by any of the statutes, she cannot charge interest in the guise of a late charge in excess of 10% per annum.

Since the late charges are considered interest under Texas law, we must next determine whether the late charge is usurious. A contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest. *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930); *see also Smart v. Tower Land & Investment Co.*, 597 S.W.2d 333 (Tex.1980).

To be liable for usury penalties, one must contract for, charge or receive interest which is greater than the amount authorized by law. Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (Vernon 1971). However, the late charge appears to be applicable to amounts due on the notes to Lomas and Nettleton and to the payment of equity to Brooks. Under the language of the contract, the late charge is only applicable to any checks received by Brooks. While the record shows that $260.00 was paid in late charges, it is not conclusive as to the number of checks that were received. We therefore must reverse the finding of the trial court and remand the case to determine whether any checks received after the first day of the month constitute usury.

Since there may be another trial, we shall address the other points assigned by appellants. Appellants also claim that the forfeiture provision in the contract, which allows the seller to regain possession of the property and keep all payments made on the contract, if the purchaser defaults on his payments, is usurious as to the entire transaction. We do not agree. Appellants have cited no cases in which the forfeiture provision of a contract for deed renders the contract usurious. On the contrary, it has been held that forfeiture provisions in contracts for deeds are provisions for liquidated damages, as this contract specifically states. *Grant v. Sherwood Shores, Inc.*, 477 S.W.2d 667 (Tex.Civ.App.–Austin 1972, no

writ). Appellants' point of error is overruled.

Appellants next assert that the trial court erred in denying their Deceptive Trade Practices and Consumer Protection Act claims. Appellants claim that appellee falsely represented to appellants that she had the right to terminate the contract without giving the required notice as required by Article 1301b, Tex.Rev.Civ.Stat. Ann. (Vernon 1980). This is a violation as a matter of law of section 17.46(b)(12), Tex.Bus & Com.Code Ann. (Vernon Supp. 1980), which prohibits the representation that an agreement confers rights prohibited by law. Since we hold that appellee has violated this statute as a matter of law, we remand to the trial court for a determination of damages, if any.[1]

Appellants complain that Brooks' conduct and representations were a violation of the Debt Collection Act, Tex.Rev. Stat.Ann. art. 5069–11.01–11.11 (Vernon Supp. 1971–1979). Article 5069–11.02(h) prohibits any debt collector from "threatening to take any action prohibited by law." Appellee's letters threatening to terminate the contract without the necessary notice required by Article 1301b is just such an action. Appellants' point is sustained.

Appellants also complain that the court erred in not allowing recovery under the independent tort of harassment. Upon a review of the evidence, we find there is sufficient evidence to support the trial court's finding. Appellants' point is overruled.

Lastly, appellants contend that the trial court erred in rendering a money judgment in the amount of the arrearage and also declaring that appellants would lose all interest in the property if they did not correct the delinquency. We agree. One cannot assert and rely on a contract, as in an action for the arrearage, and at the

---

1. Appellants also complain of the trial court's action in not awarding damages as a result of receiving collection notices and letters. Appellants claim that such notices were calculated to cause mental anguish. However, the supreme court has held that damages cannot be recovered for mental anguish alone in the absence of a wilful tort or resulting physical injury. *Brown v. American Transfer & Storage Co.*, 601 S.W.2d 931 (1980).

same time, repudiate or rescind the contract. The court had no power to enter such an order terminating appellants' interest based on what might happen. Appellee may be entitled to the money or the property, but not both.

■ When the contract is breached by the purchasers, the seller may either affirm the contract and sue to recover payments up to trial; *or* invoke the forfeiture rights. At the time of judgment the seller is put to an election.

That part of the judgment denying appellants' harassment claim and usury on account of forfeiture is affirmed and in all other respects the judgment is reversed and remanded.

Affirmed in part, and reversed and remanded in part.