SCHEPPS GROCERY COMPANY,
Appellant,

v.

BURROUGHS CORPORATION, Appellee.

No. C2918.

Court of Appeals of Texas,
Houston (14th Dist.).

May 20, 1982.

Rehearing Denied June 17, 1982.

Larry Huelbig, Lapin, Totz & Mayer, Houston, for appellant.

Ann Lents; Vinson & Elkins, Houston, for appellee.

Before MILLER, MURPHY and JAMES, JJ.

JAMES, Justice.

Appellant, Schepps Grocery Company, appeals from a judgment entered in favor of appellee, Burroughs Corporation, for a rebate of an eleven percent (11%) discount given to appellant pursuant to a computer lease agreement providing for an initial term of five (5) years. We affirm.

On March 28, 1972, the parties entered into an "Agreement for Equipment Lease and Maintenance" on a B3506 computer. The lease provided for a monthly charge of $9,902 less an 11% discount for "5 year unlimited use contract" or a total monthly charge of $8,812.78. At that time, Mr. A. I. Schepps, the president of appellant inquired as to what amount of this discount would have to be paid back were the lease terminated before the five year period. After

some discussion, Mr. Schepps wrote the following handwritten amendment to the lease:

Contract signed this date may be cancelled after one year with payback of the 11% discount.

If contract is cancelled between the 3 year and 5 year a 4% payback of discount will be assessed.

In either event, interest on these amounts would be assessed.

This handwritten amendment was signed and dated by appellee's representative.

Billing on the subject lease commenced on May 1, 1972. The lease was terminated by appellants on April 1, 1975, thirty-five (35) months after the effective date of the agreement. On April 17, 1975, appellee sent appellant an invoice for payback of the 11% discount or a sum of $35,954.70, "Interest at Current Prime Rate" or a sum of $4,249.98, and sales tax on those items. No part of that invoice was paid. Thereafter, appellee brought suit for the discount "plus interest thereon from April 17, 1975, to date of judgment."

Appellant defended the suit by asserting the affirmative defenses of failure of consideration, breach of warranty and contract, and usury. It also counterclaimed against appellee on the grounds of failure of consideration and usury. At the conclusion of the evidence in the trial, the case was submitted to the jury on special issues. Judgment was entered that appellee recover from appellant $38,954.70, interest thereon at the rate of six percent (6%) per annum from April 17, 1975 to date of judgment or the sum of $14,023.69, and attorney's fees in the sum of $10,100.

■ Appellant brings forward twenty points of error. Its points of error 1, 2, 3 and 4 concern the defense of failure of consideration. Appellant asserts that the evidence established this defense as a matter of law and that the jury's answers to Special Issue Nos. 3, 4 and 5 were contrary to the great weight and preponderance of the evidence. It further asserts that the trial court erred in granting judgment based on those answers because it had pre-viously ruled that there was a failure of consideration thus making the answers irrelevant, immaterial, and mere surplusage.

During the proceedings on the parties' objections and exceptions to the charge, the court stated: "I find from the preponderance of the evidence that there was failure of consideration." However, the court submitted Special Issue No. 3 which inquired as to whether appellee failed to provide the necessary service and parts to maintain the computer in good operating condition. It is not uncommon for a trial court to change its ruling on a particular issue as it is in the best position to construe its own ruling. In this case, the trial court either mistakenly made this statement or decided there was enough evidence to submit the issue. Appellant relies on *Kunkel v. Poe Land and Development Company*, 393 S.W.2d 191 (Tex.Civ.App.—Corpus Christi 1965, no writ), for the proposition that the issue of failure of consideration is a legal one within the province of the trial court and not the jury. While we do not dispute the correctness of this statement, *Kunkel* is distinguishable because there the issue submitted to the jury inquired as to whether the evidence "constituted failure of consideration." The court held: "It was the duty of the court (not the jury) to determine whether there was a failure of consideration in this case *based upon ultimate facts found by the jury* or conclusively established." 393 S.W.2d at 195. (emphasis ours) Consequently, in the instant case, the court's submission of Special Issue No. 3 was proper.

■ Appellant further asserts that there was no evidence and insufficient evidence to support the jury's answer to Special Issue No. 3. In considering all the evidence, we find the jury's verdict was not so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). See Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361 (1960). There was testimony to the effect that the service appellee provided appellant was

equal to or better than the service rendered by most companies. The evidence showed also that appellee's response time on service calls was two hours and thirty-four minutes compared to a four hour industry standard. The record further reflects that many of the computer's problems were not due to deficiencies in the service but to environmental problems about which appellant was advised. An installation planning manual which was given to appellant specified certain electrical, air-conditioning, heating, space, and cleanliness requirements. Appellee's service manager testified that the environmental site for the computer was never ideal because fluctuations in temperature and humidity affect the memory aspects of the computer. An engineer of appellee also testified that based on the "emergency service request forms" introduced by appellant, the computer in question experienced a 99.1% "up time" at which it was operating at full efficiency and not "down" for problems or repairs. This percentage is well above the industry standard of a 90% "up time." We find the evidence was sufficient to support the jury's verdict that appellee did not fail to provide the necessary service and parts to maintain the computer in good operating condition. Appellant's points of error 1, 2, 3 and 4 are overruled.

Appellant's points of error 5 through 13 concern the handwritten amendment to the lease. Appellant asserts that the trial court erred in ruling that the amendment was unambiguous as a matter of law, in submitting Special Issue No. 1, and in admitting testimony of appellee's company policy. After hearing some testimony in the case, the trial court ruled that the amendment was unambiguous and that the provision for the return of only a 4% payback of discount applied only to the last two years, or after thirty-six months.

■ The question of whether a contract is ambiguous is a question of law for the court. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517 (Tex. 1980). If a written instrument is so worded that a court may properly give it a certain

or definite legal meaning or interpretation, it is not ambiguous. *Alba Tool & Supply Co. v. Industrial Contractors, Inc.,* 585 S.W.2d 662 (Tex.1979); *R & P Enterprises, supra.* In the instant case, appellant submits that the phrase "between the 3 year and 5 year" means *during* the third year and up to the fifth year. We disagree. In giving these words their ordinary meaning and usage, we find this phrase means that the 4% payback provision will be applicable between the end of the third year or after thirty-six months, and the fifth year. See *Melder v. Phillips Pipe Line Co.,* 539 S.W.2d 208 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.) and *Wooten Properties, Inc. v. Smith,* 368 S.W.2d 707 (Tex.Civ.App.—El Paso 1963, writ ref'd). Consequently, we agree with the trial court's ruling that the amendment was unambiguous and that the 4% payback was not applicable in the instant case.

■ Appellant asserts that the trial court erred in submitting Special Issue No. 1 because the issue inquired as to an undisputed fact. Special Issue No. 1 provides as follows:

Q: Do you find from a preponderance of the evidence that Schepps Grocery Co. terminated the B3500 lease less than 36 months after the commencement of rental on the system on May 1, 1972?

A: We do.

Appellant contends that there was no dispute as to the fact that the lease was terminated after 35 months. We agree that there existed no need for the court to submit this issue. However, the error was not one which amounted to such a denial of the rights of appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

■ Appellant complains further of the court's admission of testimony of appellee's company policy. It asserts this evidence was admitted in violation of the parol evidence rule and contra to rules of procedure because appellee did not plead ambiguity so as to allow proof of the parties' intent.

The evidence about which appellant complains was the testimony of a Mr. Scartaccini who worked as an account manager for appellee during the time the lease was in effect. Before the testimony was admitted, the court gave the following admonition:

> I will allow you to question him on his understanding of the company's policy, but not on his understanding of the legal or quasi-legal interpretation of the contract in question. Limit it to that.

As explained by appellee's attorney after appellant's objection, the testimony was offered not to explain the terms of the handwritten amendment but to describe the context in which the agreement was negotiated and to explain why appellee sent the April, 1975 invoice as relevant to appellant's defense of usury. Consequently, we do not consider this testimony as an attempt to explain or supplement the terms of the amendment or an improper comment on the parties' intent. No error was committed by the admission of this testimony.

■ Appellant's point of error in which it asserts that the handwritten amendment is not a valid and enforceable contract because "there was no meeting of the minds" is also without merit. The amendment was drafted by appellant's own president. Additionally, the Texas Supreme Court has approved Comment B to § 230 of the Restatement of the Law of Contracts which provides in pertinent part:

> In ordinary oral negotiations and in many contracts made by correspondence the minds of the parties are not primarily addressed to the symbols which they are using, but merely to the things for which the symbols stand. Where, however, they integrate their agreement they have attempted more than assent by means of symbols to certain things. They have assented to the writing as the expression of the things to which they agree, therefore the terms of the writing are conclusive, and a contract may have a meaning different from that which either party supposed it to have.

*City of PineHurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968).

Appellant's points of error 5 through 13 are overruled.

In its points of error 14, 15 and 16 appellant asserts that the trial court erred in granting appellee a partial instructed verdict on appellant's counterclaim for usury. Appellant takes issue with the trial court's ruling that usury was not proved because of the absence of "interest charged" and a "lending transaction."

Appellant's counterclaim was based on the ground that the invoice sent to appellant by appellee after the lease was terminated included a "charge" for interest at the rate of 7.5%, the prime rate at that time. It asserts that pursuant to Tex.Rev. Civ.Stat.Ann. art. 5069–1.06(1) (Vernon Supp.1981), the interest charged was usurious because it was greater than 6%, or the amount authorized by Article 5069–1.03, providing for interest at the rate of 6% per annum on all contracts "[W]hen no specified rate of interest is agreed upon by the parties...."

■ In *Crow v. Home Savings Association of Dallas County*, 522 S.W.2d 457, 459 (Tex.1975), the Texas Supreme Court held: "It is a fundamental principle governing the law of usury that it must be founded on a loan or forbearance of money; if neither of these elements exist, there can be no usury." See *Southwest Park Outpatient Surgery, Ltd. v. Chandler Leasing Division*, 572 S.W.2d 53 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ) and *Maloney v. Andrews*, 483 S.W.2d 703 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.), both holding that late charges do not arise from a forbearance of money so as to make applicable the usury laws. Additionally, a loan or forbearance of money can only be found if there is an absolute duty of the borrower to repay the principal. *Pansy Oil Co. v. Federal Oil Co.*, 91 S.W.2d 453 (Tex.Civ.App.—Texarkana 1936, writ ref'd). In the instant case, there was no absolute obligation by appellant to pay the discount. It was payable, if at all, only at appellant's option. The 11% discount was thus not a loan nor a forbearance of money. We find no merit in appellant's defense of usury and accordingly overrule its points of error 14, 15 and 16.

■ Appellant's remaining points of error concern the trial court's award of reasonable attorney's fees to appellee. It asserts that appellee's attorneys failed to allocate the time spent in prosecuting the claim and in defending the usury counterclaim. It thus argues that this failure to allocate amounts to no evidence on the issue of attorney's fees. This same complaint is urged with respect to allocation of time for work which would be done on the case at the appellate levels.

Appellant relies on *International Security Life Insurance Co. v. Finck*, 496 S.W.2d 544 (Tex.1973) and *Kosberg v. Brown*, 601 S.W.2d 414 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ) for the proposition that an attorney must allocate the time spent on a case if attorney's fees are recoverable under one theory but not another. In *International Security Life Insurance Co.*, the plaintiff sued for attorney's fees recoverable under an insurance policy but the only evidence on attorney's fees was as to time spent in preparation for the fraud and deceit causes of action. The Texas Supreme Court thus held that there was no evidence to support the jury's award of attorney's fees in the amount of $2500. In *Kosberg*, plaintiff's suit likewise involved several different causes of action. The special issues submitted on attorney's fees limited the jury's consideration to those fees which would be reasonable under the contract. Because no attempt was made to allocate the time spent in preparing the case under the theories of fraudulent inducement and quantum meruit, the court reversed and remanded for allocation of time expended on the various causes of action.

The cases discussed above are distinguishable from the instant case. In both cases, the suits involved several distinct theories for which there was no overlap in preparation. In the case before us, appellant's counterclaim was a defense to appellee's principal claim. An overlap thus existed in the efforts made by appellee's attorneys in developing the case. A party may properly recover for legal services in prosecuting its claim although the same services also relate to defending a counterclaim. *Miller v. Pat-*

*terson*, 537 S.W.2d 360 (Tex.Civ.App.—Fort Worth 1976, no writ). See also *Duval County Ranch Co. v. Alamo Lumber Co.*, 597 S.W.2d 528 (Tex.Civ.App.—Beaumont 1980, writ ref'd n. r. e.) and *Damstra v. Starr*, 585 S.W.2d 817 (Tex.Civ.App.—Texarkana 1979, no writ). We find the evidence was sufficient to support the jury's award of attorney's fees for work done at trial and on appeal. That verdict will not be disturbed. *Kosberg v. Brown*, 601 S.W.2d 414 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).

■ Finally, appellant objects to the inclusion of the reference to "180 hours spent by Burroughs Corporation's attorneys in prosecuting its claim in this case" in Special Issue No. 2. It argues that "there is no way to reconcile the number of hours cited with the various hours testified to by appellee." Appellant's objection at trial was not based on this ground. It objected only to the failure to allocate as discussed above. Rule 274 of the Texas Rules of Civil Procedure provides that every complaint as to an issue shall be deemed as waived unless specifically included in the objection to the charge. We find that appellant waived this complaint by its failure to make this specific objection.

Appellant's points of error 17, 18, 19 and 20 are overruled and the judgment of the trial court is affirmed.