**H.V. TYGRETT, Jr., Independent Executor of the Estate of Howard V. Tygrett, Appellant,**

v.

**UNIVERSITY GARDENS HOMEOWNERS' ASSOCIATION, Appellee.**

No. 05-83-01264-CV.

Court of Appeals of Texas, Dallas.

Feb. 28, 1985.

Rehearing Denied March 29, 1985.

R. Gregory Lamb, Dallas, for appellant.

Earl Bentley, Dallas, for appellee.

Before AKIN, SPARLING and WHITHAM, JJ.

SPARLING, Justice.

Appellee, University Gardens Homeowners' Association, sued H.V. Tygrett, appellant, to collect a late payment penalty

charge resulting from overdue assessments on Tygrett's condominium. Tygrett counterclaimed for statutory penalties under TEX.REV.CIV.STAT. art. 5069–1.06 (Vernon 1971 & Vernon Supp.1984), contending that the late charge amounted to usurious interest. The Association prevailed in a trial to the court on stipulated facts, and Tygrett's counterclaim was denied. Tygrett contends on appeal that the trial court erred in its conclusion of law that the late charge was not usurious interest. We disagree and affirm.

Tygrett owned a condominium unit in the University Gardens project. The Association was an unincorporated nonprofit entity comprised of all the owners of the individual units at University Gardens, including Tygrett. Pursuant to the by-laws of the Association and the Condominium Declaration, the Association administered the overall operation of the condominiums, which included assessing the individual owners their proportionate share of the various common expenses incurred in managing and maintaining the property.[1]

Assessments to condominium owners were collected on a monthly basis. In accordance with the by-laws, a five-dollar late charge was added for each day that the monthly assessment was overdue. Tygrett, whose monthly assessment was $228.48, was delinquent in his payment a total of 79 days in three separate months. He did not dispute the amount of the assessments due, and eventually paid them. However, Tygrett refused to pay the resulting $395.00 late charge, asserting that it was usurious interest.

The trial court, in its findings of fact and conclusions of law, found in part that: (1) the Association entered into a written contract with Tygrett which provided for his payment of assessments "intended to provide funds from which to pay anticipated expenses common to the Association" and for late payment penalties; (2) the Association was entitled to demand a $395.00 late

---

1. Common expenses included maintenance costs, utility charges, taxes, insurance, and administrative expenses.

payment penalty from Tygrett for late assessment payments; (3) Tygrett refused to pay such penalty; (4) Tygrett was eighty-two years old and ill during this period, and did not fail to pay the penalties due to conscious indifference; (5) the Association was entitled to a judgment of $395.00 against Tygrett; and (6) the late payment penalty was not interest as that term is statutorily defined.[2]

Article 16, section 11 of the Texas Constitution authorizes the legislature to classify loans and lenders, regulate lenders, define interest, and fix maximum rates of interest. Pursuant to this authority, the legislature defined usury as "interest in excess of the amount allowed by law," and interest as "the compensation allowed by law for the use or forbearance or detention of money." TEX.REV.CIV.STAT.ANN. art. 5069–1.01(a), (d) (Vernon 1971). Thus, for the usury laws to apply, there must be an overcharge by a lender for the use, forbearance, or detention of the lender's money. *Stedman v. Georgetown Savings & Loan Association*, 595 S.W.2d 486, 489 (Tex.1979). The question, then, is whether the late charge was for the "use or forbearance or detention" of the Association's funds by Tygrett and therefore interest.

The "use" of money provision referred to in the statute is that which is contracted for when a loan is made. *Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322, 323 (1899). The late charge imposed was clearly not within this category because no funds of the Association were transferred or "loaned" to Tygrett.

"Forbearance" occurs when there is a debt due or to become due, and the parties agree to extend the time of its payment. *Meyer v. Mack Sales, Inc.*, 645 S.W.2d 493, 495 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). It is undisputed that the assessments were due. However, there is no evidence that the Association agreed to extend the time of Tygrett's payment, or to forego collection or demand for immediate payment, regardless of payment of the late charge. We thus conclude that there was no "forbearance" within the meaning of the usury statute.

Finally, the "detention" of money arises when a debt has become due and the debtor has withheld payment without a new contract giving him the right. *Parks*, 51 S.W. at 323. Because usury must be founded on an overcharge by a *lender* for the use, forbearance or *detention of the lender's money*, the definition of "detention" necessarily requires a lending transaction between the parties themselves. *See Stedman*, 595 S.W.2d at 489 (emphasis added). *See also Crow v. Home Savings Association of Dallas County*, 522 S.W.2d 457, 459 (Tex.1975)—(a major emphasis delineating between a legal and a usurious transaction is whether the party charging for the use, forbearance or detention of money "himself lends to the borrower"). Thus, the Association can be held to have overcharged Tygrett for the detention of money only if Tygrett detained the Association's money by agreeing that the Association pay his creditors and then later discharging his "debt" to the Association through payment of the assessments. In the present case, the evidence reflects that no such lending relationship between the Association and Tygrett existed. Rather, the following evidence indicates that the Association was merely a conduit or agent of the owners which maintained an account containing, among others, Tygrett's money, through which Tygrett paid his own individual debts as a member of the Association.

The Association was empowered to annually prepare a budget for the condominiums to determine the amount payable by the owners to meet the common expenses. Accordingly, the assessments were fixed in an amount approximating the "projected

---

**2.** Interestingly, the dissent argues that a provision in the Condominium Declaration for interest at 10% somehow inalterably stamps this agreement as a loan and otherwise contaminates the legality of the penalty provision. This unique concept of this case was neither briefed nor argued by the parties and we can find no provision in the law to justify such a conclusion.

operating expenses" of the Association, which were divided into three categories:

(a) Current expense, which shall include all funds and expenditures within the year for which the funds are budgeted, including a reasonable allowance for contingencies and working funds, except expenditures chargeable to reserves and to additional improvements.

(b) Reserve for deferred maintenance, which shall include funds for maintenance items which occur less frequently than annually.

(c) Reserve for replacement (sinking fund), which shall include funds for repair or replacement required because of damage, wear or obsolescence.

If the Association overestimated the expenses, the by-laws provided that it could decrease the assessments or return any excess at the end of the year. If the Association underestimated, it could increase the assessments or levy a special assessment. The Declaration required Tygrett to pay, *in advance,* his portion of the "estimated or actual" expenses before the first of each month. The Declaration also provided that the common expenses assessed were the "personal and individual debt of the owner," and unpaid assessments constituted a lien upon the owner's condominium. Further evidence that the Association was merely a distributor for the owner's money may be found in a letter to the condominium owners from the Association regarding delinquent assessments:

The Association is a non-profit organization and has no source of income except from your assessments. If you don't pay, there is nothing with which to pay the costs of running the complex. *If you don't pay on time, we are forced to put off paying bills,* risking loss of discounts and our credit rating. . . . I also urge

you to make sure your assessments are paid on time simply to *avoid the additional operating costs necessary to collect delinquent assessments.* (Emphasis added).

We conclude that there is sufficient evidence from the aforementioned documents that there was no "debt" owed to the Association as a lending entity, and thus no "detention" of money within the meaning of the usury statute.[3]

Tygrett relies upon *Dixon v. Brooks,* 604 S.W.2d 330, 334 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), which stated that under Texas law "late charges are considered interest." *Dixon,* however, concerned a late charge on a promissory note, in which a lending relationship was clearly established.[4] Here, as previously discussed, there was no such lending relationship to which "interest" as defined by statute could attach. Further, Texas law has indeed recognized several types of transactions where there was no lending relationship and thus late charges did *not* constitute usurious interest, including: (1) rental or lease relationships [*Schepps Grocery Co. v. Burroughs Corp.,* 635 S.W.2d 606, 610 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Apparel Manufacturing Co. v. Vantage Properties,* 597 S.W.2d 447, 448–49 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.); *Southwest Park Out-patient Surgery, Ltd. v. Chandler,* 572 S.W.2d 53, 55 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Maloney v. Andrews,* 483 S.W.2d 703, 704–05 (Tex.Civ.App.—Eastland 1972, writ ref'd n.r.e.) ]; and (2) utility billings *Rimco Enterprises, Inc. v. Texas Electric Service Co.,* 599 S.W.2d 362, 366 (Tex.Civ. App.—Fort Worth 1980, writ ref'd n.r.e.).

 The usury statutes are penal in nature and are to be strictly construed.

---

3. The Keystone of the dissenting opinion is the statement: "It is inconceivable that when, for example, utility charges were payable that Tygrett's proportionate part went unpaid." This is sheer speculation. It is just as easy to speculate that *none* of the utilities were paid until *all* the assessments were collected. Indeed, the letter to Tygrett stated, "If you don't pay on time, we are forced to put off paying bills." In either

event, it is the nature of the relationship, not its mechanics, that is controlling.

4. In *Dixon v. Brooks,* 678 S.W.2d 728 (Tex.App. —Houston [14th Dist.] 1984, no writ), a subsequent opinion after remand, the court held that the same late charges were not usurious.

*Texas Commerce Bank-Arlington v. Goldring*, 665 S.W.2d 103, 104 (Tex.1984). Any doubt as to the intention of the legislature to punish the conduct of the party should be resolved in favor of the defendant. *Hight v. Jim Bass Ford, Inc.*, 552 S.W.2d 490, 491 (Tex.Civ.App.—Austin 1977, writ ref'd n.r.e.). The question of usury must be determined by a construction of all the documents constituting the transaction, interpreted as a whole, and in light of the attending circumstances. *Spanish Village, Ltd. v. American Mortgage Co.*, 586 S.W.2d 195, 199 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.). Moreover, there is a presumption that the parties intended a nonusurious contract; when the contract by its terms, construed as a whole, is doubtful, or even susceptible to more than one reasonable construction, the court will adopt the construction which comports with legality. *Smart v. Tower Land & Investment Co.*, 597 S.W.2d 333, 340–41 (Tex.1980). Applying these rules of construction, we conclude that the late charge here does not fall within any of the statutory definitions of interest, and thus is not interest as a matter of law. *Meyer*, 645 S.W.2d at 495. There was no "lending relationship" as contemplated by the statute. Rather, the evidence reflects that the charge was a device to induce timely payment so as not to penalize the credit rating of the Association of which Tygrett was an integral part, and to require the delinquent payers to bear collection costs that resulted from delay in paying their collective bills.

Appellant's points of error are overruled.

Affirmed.

WHITHAM, Justice, dissenting.

I respectfully dissent. In my view, the late payments are interest, the interest charged was usurious and the trial court erred in failing to render judgment accordingly. Consequently, I would sustain Tygrett's three points of error and reverse and render judgment in favor of Tygrett. TEX.REV.CIV.STAT.ANN. art. 5069–1.-01(a) (Vernon 1971), defines interest as "the compensation allowed by law for the use or forbearance or detention of money." The detention of money arises in a case when a debt has become due, and the debtor withholds its payment without a new contract giving him the right to do so. *Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322 (1899). In my view, a debt has become due in the present case and the debtor has withheld its payment without a new contract giving him the right to do so. Therefore, I disagree with the majority's holding that there has been no detention of money in the present case.

I cannot agree with the majority that, by virtue of the assessments, Tygrett was paying his own obligations; hence, no debt to the other owners can exist to be detained. The majority's interpretation disregards the provisions of article twenty-two of the Condominium Declaration for University Gardens providing for interest on past due assessments. Article twenty-two reads:

> The amount of common expenses assessed against each condominium shall be the personal and individual debt of the owner thereof. No owner may exempt himself from liability for his contribution toward the common expenses by waiver of the use or enjoyment of any of the common elements or by abandonment of his unit. The Board of Managers or Managing Agent shall have the responsibility to take prompt action to collect any unpaid assessment which remains unpaid more than fifteen (15) days from the due date for payment thereof. In the event of a default by an owner in the payment of the assessment, such owner shall be obligated to pay interest at the rate of ten percent (10%) per annum on the amount of the assessment from due date thereof, together with all expenses, including attorney's fees, incurred to collect such assessment together with late charges as provided by the By-Laws of the Association.

Furthermore, the majority's interpretation disregards the provisions of article 4, (3)(f) of the by-laws of the association reading:

To collect delinquent assessments by suit or otherwise and to enjoin or seek damages from an owner who may be in default as is provided in the Declaration and these By-Laws. To enforce a per diem late charge of FIVE and 00/100 DOLLARS ($5.00) and to collect interest at the rate of ten percent (10%) per annum in connection with assessments remaining unpaid more than fifteen (15) days from due date for payment thereof, together with all expenses, including attorney's fees incurred.

To my mind, the provision for ten percent (10%) interest per annum payable to the other owners contemplates a debt due the other owners. In my view, the provision for a late charge so immediately tied to provisions for the stated interest of ten percent is nothing other than a provision for additional compensation cast in the terminology of a "late charge." Thus, the compensation to be paid is the stated interest of ten percent (10%) of the principal per annum plus the five dollars a day late charge fixed by the by-laws of the University Gardens Condominium Association.

Furthermore, my view that there is a debt due the other owners is reinforced by the fact that article twenty-three of the condominium declaration goes on to impose a lien upon the debtor's property to secure the payment of the debt. In the language of article twenty-three:

All sums assessed but unpaid for the share of common expenses chargeable to any condominium unit shall constitute a lien on such unit superior to all other liens and encumbrances, except only for tax and special assessment liens on the unit in favor of any assessing unit, and all sums unpaid on a first mortgage or first deed of trust of record, including all unpaid obligatory sums as may be provided by such encumbrance.

In the present case, all of the owners paid into a cooperative pool (the association) various common expenses incurred in managing and maintaining the property. As stipulated by the parties, "[t]he revenue generated by the collection of assessments from homeowners is applied by the Association principally to pay for the cost of maintenance of the condominium properties, the payment of utility charges and taxes, premiums for required insurance coverages and administrative expense." To facilitate payment of these expenses, assessments were collected of and from all the owners collectively through the vehicle of the association, an unincorporated nonprofit entity comprised of all owners, including Tygrett. The creation and operation of the association cannot change the fact that all of the owners were to pay the various common expenses. It is inconceivable that when, for example, utility charges were payable that Tygrett's proportionate part went unpaid. Therefore, if one owner failed to pay his proportionate share, then other owners had to pay his share on his behalf. Thus, Tygrett's debt to the other owners was created when he defaulted in the payment of an assessment.

To negate the existence of this debt owed the other owners, the majority places great reliance upon portions of a letter to the owners from the association. I quote the letter in full and underscore the close interrelationship between the stated interest of ten percent (10%) per annum and the late charges as compensation for the detention of money.

Section 21 of our Declaration provides that payment of your maintenance assessment is due monthly in advance on the first day of each month. Under Article IV. 3.(f) of our By-laws the Board of Managers is authorized to collect a $5.00 late charge *for each day* your assessment is not paid after the first of the month. The same provision authorizes the Board to collect interest at the rate of 10% per annum if your assessment remains unpaid for more than 15 days. (emphasis in original).

Effective April 1, 1978, the foregoing provisions will be put into effect, as follows:

(1) If payment of your assessment is not received in the Association's office by 5:00 p.m. on the second business day of

the month for which it is due, a late charge of $5.00 a day will be made for each day during which the assessment remains unpaid after the first of the month.

(2) If your assessment remains unpaid for more than 15 days, *in addition to the late charges* described above, *you will be charged interest at the rate of 10% per annum* until the assessment is paid. (emphasis added).

(3) Several homeowners are seriously delinquent in the payment of maintenance assessments—some going back to the date of closing on their individual units. These owners will have until 5:00 p.m. on April 3, 1978, to pay all amounts due, in full. After that time, *late charges and interest will* be added to their accounts. Obviously, this could amount to quite a lot of money in some cases. (emphasis added).

The Association is a non-profit organization and has no source of income except from your assessments. If you don't pay, there is nothing with which to pay the costs of running the complex. If you don't pay on time, we are forced to put off paying bills, risking loss of discounts and our credit rating. I am sure you don't want University Gardens operated in that fashion.

I also urge you to make sure your assessments are paid on time simply to avoid the additional operating costs necessary to collect delinquent assessments. In my opinion, the money could be better spent.

If you pay your assessments on time regularly, we thank you. Obviously, this letter is not directed at you.

Contrary to the interpretation placed on the letter by the majority to negate debt, I read the letter as a plea that owners pay on time, otherwise their fellow owners will have to pay their share for them; and that if payment is not timely that steps will be taken to collect the resulting debt.

When Tygrett failed to pay, the other owners had to "lend" him his part of the common expenses. Therefore, I cannot agree with the majority that the association was merely a conduit "through which Tygrett paid his own individual debts as a member of the Association." To my mind, the present case is one in which a debt has become due to the other owners and Tygrett has withheld its payment without a new contract giving him the right to do so. Consequently, I would hold that there has been a detention of money within the meaning of article 5069–1.01(a). Moreover, in my view, the late charges are compensation for that detention of money, as is the stated interest of ten percent (10%) per annum. It follows, and I would further hold, that the late charges are interest.

Having concluded that the late charges are interest, it must next be determined whether the late charges are usurious. A contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest. *Shropshire v. Commerce Farm Credit Co.*, 120 Tex. 400, 30 S.W.2d 282 (1930). The stated interest of ten percent (10%) per annum was the maximum amount allowed by law in the present case. TEX. REV.CIV.STAT.ANN. art. 5069–1.02 (Vernon 1971). Therefore, provision for the late charges was the contingency by which the association may receive more than the lawful rate of interest. Consequently, I would hold that the late charges are usurious.

Accordingly, I would reverse the judgment of the trial court and render judgment that the association take nothing against Tygrett. I would render judgment in favor of Tygrett and against the association in an amount calculated under TEX. REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1971 & Vernon Supp.1984), together with interest on that amount at the rate of nine percent (9%) per annum from the 15th day of July 1983, the date of the trial court's judgment.