Jack BUTLER, Appellant,

v.

**HOLT MACHINERY
COMPANY, Appellee.**

No. 04–86–00295–CV.

Court of Appeals of Texas,
San Antonio.

Oct. 21, 1987.
Rehearing Denied Nov. 25, 1987.

Robert L. Vale, San Antonio, for appellant.

Gerald T. Drought, Steven P. Redgate, San Antonio, for appellee.

Before CADENA, C.J., and CANTU, and REEVES, JJ.

## OPINION

REEVES, Justice.

This is an appeal from a usury case. On June 22, 1982, Jack Butler entered into two purchase order contracts to lease/purchase two tractors from Holt Machinery Company. Each purchase order provided:

> [the] Machine [a Caterpillar D–6 tractor] is rented for six months at $5,000.00 per month interest free. Customer is obligated to purchase the machine at the end of the sixth month. Machine is then financed for 36 months at 12% fixed simple interest OR 3% cash discount will be allowed on net payoff balance, no prepayment penalty.

On February 28, 1983, Butler executed two contracts to purchase the tractors (Contracts A & B). The following is a list of the financial items contained in the contracts:

| ITEM | CONTRACT A | CONTRACT B |
|------|-----------:|-----------:|
| 1. Sales price | $127,500.00 | $125,500.00 |
| 2. Less cash down payment (previous six months rent) | 30,000.00 | 30,000.00 |
| 3. Unpaid balance | 97,500.00 | 95,500.00 |
| 4. Interest during rental period | 2,206.40 | 2,129.91 |
| 5. Unpaid balance | 99,706.40 | 97,629.91 |
| 6. Finance charge[A] | 19,514.06 | 19,107.64 |
| 7. Time balance (items 5 & 6) | 119,220.46 | 116,737.55 |
| 8. Time—sale price (items 2 & 7) | $149,220.16 | $146,737.55 |

On July 12, 1983, Butler executed a third contract to purchase a third Caterpillar tractor (Contract C). The cash price was $110,000.00. The time-sale price was $131,562.00.[B] Butler also maintained an open account for parts and service.

Butler made sporadic payments, and by August, 1984, he was delinquent on all four accounts. On August 14, 1984, he executed a fourth contract which consolidated the balances on the three tractor accounts and the open account. The material financial items comprising the new contract were:

---

A. The finance charge was determined as a sum equal to that which would be derived if one were to take the unpaid balance listed in item 3 and multiple it by 12% simple interest per annum, charged over three years and factored on a monthly basis against the decreasing balance.

B. While this contract was marked as an exhibit, it was not introduced into evidence. The figures quoted are from the testimony of Holt's bookkeeper.

| 1. | Cash price C | $266,255.70 |
| 2. | Finance charge | 52,110.30 |
| 3. | Time-sale price | $318,366.00 |

Payments were to be made in 36 monthly installments of $8,842.50.

After Butler executed the consolidated contract, Holt sent a payment booklet containing 36 payment coupons. Each coupon listed the regular payment of $8,842.50 and a late payment of $9,284.68. In effect, Holt added a $442.18 fee in case of late payment.

Butler's payments under the consolidated contract were also sporadic, and on June 25, 1985, he was notified in writing that if he missed any future payment, he would be considered in default. On July 15, 1985, Butler made a large payment to reduce his arrearages. However, even that did not bring his account current. Butler missed his August 1985 payment and on August 31, 1985, Holt filed suit for the entire amount owed. In its petition, Holt alleged that after all just and lawful offsets, Butler owed $238,774.50 on the consolidated contract. Holt also sent Butler a demand letter for $238,774.50 on September 20, 1985. Butler filed an answer and later a compulsory counterclaim alleging that the consolidated contract was usurious.

Trial was before the court, which made the following findings of fact and conclusions of law:

1. Each purchase order was a lease for a fixed term at a fixed rate and contained an option to purchase for an agreed cash price or an agreed term price.

2. The first three tractor sale contracts were conditional sale contracts containing an agreed time-sale price.

3. The $2,206.40 charged as "interest during rental period" in Contract A was not an approved charge and will be deducted from the time-sale price.

4. The $2,129.91 charged as "interest during rental period" in Contract B was not an approved charge and will be deducted from the time-sales price.

5. Late charges on Contracts A, B and C were neither agreed to nor disclosed. The amounts collected as late charges will be allocated to principal on the dates the payments were received.

6. The consolidated contract was not a conditional sales contract but rather an extension of credit to refinance the unpaid principal balance of the three prior contracts and the unpaid balance of a sworn account [the open account].

7. The amount financed in the consolidated contract will be reduced by an amount equal to the unearned interest of the three prior contracts.

8. Late charges on the consolidated contract were neither agreed to nor disclosed and therefore constitute interest.

9. Holt's demand letter for payment of the entire balance manifested an intent to charge unearned interest.

The court entered a judgment based on those findings and conclusions and upon data provided in Holt's Motion for Judgment. The court adjudged that (1) as of December 13, 1985, Butler owed Holt $196,576.70 on the consolidated contract; (2) the maximum amount of interest Holt could have charged Butler was $53,339.68; (3) Holt actually charged Butler $68,028.78 in interest; (4) Holt charged usurious interest of $14,689.10, which when trebled as provided by TEX.REV.CIV.STAT.ANN. art. 5069–1.06(1), totaled $44,067.30; (5) the $44,067.30 would be credited to the $196,476.70; (6) Holt recover from Butler $19,657.67 in attorney fees which Holt incurred prosecuting the suit on the consolidated contract; (7) Butler recover $50,000.00 from Holt for attorney fees he incurred in prosecuting his usury claim.

Butler as appellant/counter-appellee, and Holt as appellee/counter-appellant, now appeal the judgment. Because Holt's first counterpoint of error is of such a nature as to negate the principal part of Butler's appeal if sustained, we shall discuss it first.

C. The listed cash price was to be equal to the outstanding balances on the three tractor accounts and the open account. In arriving at the $266,255.70 figure, Holt factored in the "interest during rental period" (item 4 of Contracts A and B), and late payment charges. For reasons explained later, the trial had these sums deducted from the cash price. This reduced the cash price to $242,054.91.

Holt first complains that the trial court erred in not finding the consolidated contract to be a conditional sales contract. In essence, it argues that the contract contained a time-price differential which, under TEX.REV.CIV.STAT.ANN. art. 5069–1.01(a), was not subject to the usury statutes. Holt reasons that since the contract was not subject to the usury statutes, Holt cannot be liable for charging usurious interest when it demanded full payment, including non-accrued (unearned) time-price differential. Because the consolidated contract concerned farming tractors and an open account, it does not come within the purview of subtitle 2 of article 5069. *See Rotello v. International Harvester Company*, 624 S.W.2d 249, 250, n. 1 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). Thus, our review will be based on the provisions of subtitle 1. We must first determine whether the finance charge is a time-price differential.

TEX.CIV.STAT.ANN. art. 5069–1.01(a) defines "interest" as "the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any time-price differential however denominated arising out of a credit sale." If the finance charge in the consolidated contract was a time-price differential, then it would not be considered interest.

Holt alleged time-price differential as an affirmative defense to Butler's claim of usury. *See Commercial Credit Equipment Corp. v. West*, 677 S.W.2d 669, 674 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.). For the court to distinguish time-price differential from interest, the seller must prove that: (1) a cash price and a credit price were offered; (2) the purchaser was aware of the two offers; and (3) the purchaser knowingly chose the higher credit or "time-price." *Weis v. Taylor*, 613 S.W. 2d 332, 334 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.). In this case, the consolidated contract contained a cash price and a time-sale (i.e., credit) price. From its face, the consolidated contract appears to contain a time-price differential. However, this Court has held that if a transaction is actually a device to avoid this State's usury laws, it is not saved by any attempted difference between a claimed "cash" price and a claimed "credit" price. *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). From the face of the consolidated contract, Holt appears to be selling Butler three farm tractors and various implements. There is no mention of the open account. However, at trial it was undisputed that the items listed in the consolidated contract had already been purchased under Contracts A, B, and C and under the open account.

■ The consolidated contract was not executed pursuant to a sale. Rather, it was a consolidation of the outstanding balances on the three previous tractor contracts and the open account. It also extended the time in which those items could be paid. The definition of "interest" in article 5069–1.01(a) excludes any time-price differential arising out of a credit sale. We hold that the trial court did not err in finding that the consolidated contract was not a conditional sales contract but rather was an extension of credit to refinance the unpaid principal balance of the three prior tractor contracts and the unpaid balance of the open account.

Holt's first counterpoint is overruled.

■ In its second point, Holt argues that the trial court erred in finding that the late payment fees printed on each of the payment coupons mailed to Butler in connection with the consolidated contract were neither agreed to nor disclosed and therefore constituted interest. As we noted earlier, the definition of "interest" includes the compensation allowed for the detention of money. TEX.CIV.STAT.ANN. art. 5069–1.01(a). It has been held that the detention of money arises in a case where a debt has become due and the debtor withholds its payment without a new contract giving it a right to do so. *Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322, 323 (1899). *Tygrett v. University Gardens Home-*

*owners' Ass'n*, 687 S.W.2d 481, 483 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).[D]

▇ Before suit was filed, Butler paid late charges on thirteen payments. At the time each late payment was made, the respective monthly payment had become due. Thus, the late payments were compensation for the detention of money. We hold that so far as the thirteen paid late payments are concerned, the trial court did not err in finding that the late charges constituted interest.

▇ However, we hold the trial court erred in finding that the remaining 23 late fees constituted interest. At the time suit was filed, the payments to which those fees related had not accrued. Thus, there was no compensation for the use, forbearance, or detention of money. Listing late fees on payment coupons for installments which had not accrued does not constitute interest.

The trial court's finding that the late charges on the consolidated contract constituted interest is affirmed in part and modified in part.

In counterpoints three and four, Holt argues that the trial court erred in finding that the "interest during rental period" (item 4 of Contracts A and B) was not an approved charge and thus was to be deducted from the cash price of the consolidated contract. The purchase orders preceding Contracts A and B provided that the respective tractors would be rented by Butler for six months interest free after which time Butler would purchase the machines. After that six month period expired, Butler continued using the machines for 69 days before executing Contracts A and B. Holt reasons that it was entitled to charge Butler for those 69 days.

Holt argues that since the purchase orders were lease agreements, charges made thereto did not constitute interest since no loan of money was involved. It has been held that charges made on a lease arrangement do not constitute interest since leases do not involve the loaning of money. *Ma-*

*loney v. Andrews*, 483 S.W.2d 703, 704 (Tex.Civ.App.—Eastland 1972, writ ref'd n.r.e.). Like *Tygrett, supra*, the court in *Maloney* found that the usury statutes do not apply in cases where no lending transaction is involved.

However, the transactions upon which the purchase orders were based were lending transactions. Each purchase order stated a specific sale price for the item involved. While it provided that the item was rented for six months, it stated that Butler was "obligated to purchase the machine at the end of the six months." Furthermore, it provided terms for that purchase.

▇ Since the purchase orders involved a lending transaction and since interest during the rental period was neither agreed to nor disclosed, the trial court did not err in having those charges deducted from the time-sale price on Contracts A and B.

Counterpoints three and four are overruled.

▇ Holt's counterpoint that the trial court erred in the amount of attorney fees awarded Butler is overruled. Butler's counsel presented the testimony of another attorney who stated he was familiar with consumer credit litigation. He testified concerning the value of the services rendered by plaintiff's counsel. Part of that evidence was that it was reasonable to receive as attorney fees $30,000.00 for prosecuting each section of art. 5069–1.06. While Holt cross-examined the attorney, it presented no evidence controverting the testimony of the witness. The evidence supports the award. *First Federal Savings v. Bustamante*, 609 S.W.2d 845, 847 (Tex.Civ.App.—San Antonio 1980, no writ).

Butler first complains that the trial court erred in failing to find that Holt charged interest when it filed its original petition. We agree.

▇ Filing an original petition demanding the payment of unearned interest con-

---

**D.** We are aware that in *Tygrett,* the court found that late charges were not interest. However, in that case the court found no lending relation-ship. In the instant case, we believe a lending transaction existed.

stitutes a "charging." *Moore v. White Motor Credit Corp.*, 708 S.W.2d 465, 468 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). While the court in that case was addressing the term "charging" as used in art. 5069–8.02, the language in that section of the statute so closely parallels section 1.06 as to persuade us that the holding there would be just as applicable to the instant case.

Butler's first point of error is sustained.

Butler next complains that the trial court erred in the method it computed the maximum amount of interest which Holt could have charged. In computing that maximum amount, the trial court determined that there were four hundred days (1.06 years) for which Holt could have charged interest on the consolidated contract. This represents the time from the day the contract was executed (August 15, 1984), to the day Holt sent its demand letter for full payment (September 20, 1985). Butler argues that the time period should have been the 45 days from the day he made his last payment (July 15, 1985) to the day Holt filed suit (August 31, 1985).

■ We agree that the court erred in its calculations. However, we do not find that it should have used the 45 day period. We hold that the time period for which Holt could have charged interest was the number of days from the day the contract was executed to the day suit was filed. In determining the maximum amount of interest which could have been charged on the consolidated contract, the court should have used the following formula:

[ (Principal x Maximum Interest Rate) ÷ 365 days] x number of days interest could be charged on that amount of principal = Maximum amount of interest.

Each time Holt made a payment, the balance on the principal decreased. Thus, each time a payment was made, the formula recited above would be used to determine the maximum amount of interest Holt could have charged on the principal before that payment was made. We have included our computations at the end of this opinion.

Butler's second point of error is overruled.

Butler next complains that the trial court erred in determining the "maximum rate of interest" factor in the formula presented above. Before we address the merits of this point, some background is needed.

As heretofore stated, the consolidated contract was composed of the three tractor contracts and an open account. The trial court determined that the maximum rate of interest which could have been charged on the open account balance before it became part of the consolidated contract was six percent per annum. The trial court also determined that after the balance became part of the consolidated contract, the maximum rate of interest which could have been charged on that portion was ten percent per annum. The court also determined that the maximum rate of interest which could have been charged on the portion of the consolidated contract representing the balances owed on the three tractors was 21.15 percent per annum.

Butler argues that since no more than ten percent per annum could have been charged on a portion of the consolidated contract, that rate should be applied to the entire contract, but cites no authority to support the proposition.

This issue is covered by art. 5069–1.04($l$) which provides:

The maximum rate on any contract to renew or extend the terms of payments of any indebtedness at any time incurred, is the applicable ceiling allowed by this Article for contract entered at the time the renewal or extension is made or agreed to.

■ We find that a rate of 21.15 percent per annum applies to the principal in the consolidated contract, regardless of its source.

Butler's third point of error is overruled.

In connection with Contracts A, B and C, Butler received a payment coupon booklet. Contained therein were coupons for late payment fees which were not agreed to in the contracts. In points of error four and five, Butler complains that the trial court erred in not finding that by sending the

late payment coupons and in receiving late payment fees, Holt Machinery *received* or *charged* usurious interest. The finance charge on Contracts A and B was equal to twelve percent per annum simple interest. The finance charge on Contract C was equal to eleven percent per annum simple interest. Butler points out that the maximum rate of interest which could have been charged was twenty-four percent per annum for Contracts A and B, and eighteen percent per annum for Contract C. Late payment fees were equal to five percent of the monthly payment. Five late payment fees were collected on Contract A and on Contract B. Four late payment fees were collected on Contract C.

■ While the court treated the late payment fees as interest, it properly did not find them to be usurious. At maximum, the fees would have increased the total interest rate on each contract by five percent per annum. Even with the increase, the contracts would not have exceeded the maximum legal rate allowed.

Points of error four and five are overruled.

Butler next complains that the trial court erred in not finding that the three tractor contracts and the consolidated contract were usurious. He argues that each contract allowed Holt to demand the entire time-sale price upon default.

The material language concerning default is identical in the consolidated contract and Contracts A and B.[E] The contracts provide that:

> In the event of any default described above, Secured Party may, at its sole option, declare all obligations secured herein immediately due and payable.

The issue is whether the acceleration language allowed Holt to demand the entire time-sale price, inclusive of unearned interest. Whether the inclusion of an acceleration clause makes the contract usurious is a question of construction. *Smart v. Tower Land and Investment Co.,* 597 S.W.2d

333, 340 (Tex.1980). A contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest. *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 30 S.W.2d 282, 285 (1930) (quoting 27 Ruling Case Law, section 24).

The acceleration language provided that Holt may declare "all obligations secured herein immediately due and payable." The operative word here is "obligations." The question is whether the parties intended that word to mean the debt which had accrued to that point or the face amount of the contract.

The Supreme Court has noted that the critical distinction between an acceleration clause which provides the maturity of a "debt" and one which provides the maturity of a "note." *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 328 (Tex. 1984). A provision which states that a "debt" may be matured does not call for the collection of unearned interest, because interest does not become part of the "debt" until it is earned. *Id.* However, when it is provided that a "note" may be matured, the obvious intent of the contracting parties is that the entire face amount of the note, including unearned interest, is to be collected upon acceleration. *Id.*

■ After applying the rules of contract construction, the term "obligations" as used in the acceleration clause remains subject to more than one reasonable interpretation. Thus, the parties' intent under the acceleration clause became a question of fact for the trial court, as fact finder, to determine. *See Harris v. Rowe,* 593 S.W. 2d 303, 306 (Tex.1980). We find the trial court did not err in not finding the consolidated contract usurious. Butler failed to have Contract C admitted. Thus, we need not address this issue insofar as that contract is concerned.

Point of error six is overruled.

■ Butler also complains that the trial court erred in finding that each purchase

E. Contract C was never tendered into evidence and so we cannot say for certain what the language in that contract was.

order was a lease contract containing an option to purchase. He argues that each purchase order was a sale contract which contained no time-price differential. We agree.

■ Butler also argues that the "interest during rental period" charge (item 4 of Contracts A and B) was interest which should have been added to any other interest contracted for, charged, or received on the purchase order contracts. We disagree.

The "interest during rental period" charge was item 4 of Contracts A and B. The charge was a component of those contracts only. The court properly found that the charge was not agreed to, constituted interest, and was to be deducted from the time-sale price of Contracts A and B.[F]

■ In point of error ten, Butler argues that the trial court erred in awarding Holt attorney fees. In light of Butler recovering on his usury claim, we agree. *San Juan Pools, Inc. v. Krohn*, 594 S.W.2d 492, 496 (Tex.Civ.App.—San Antonio 1979, no writ). Point of error ten is sustained.

Based on our holding in this opinion, we must now compute Butler's recovery. We begin by determining the maximum amount of interest which could have been charged.

I. INTEREST CHARGED

| | | |
|---|---|---:|
| A. | Amount sought in petition | $238,774.50 |
| B. | Less amount actually owed = original contract balance + accrued interest – payments made = $242,054.91 + $13,498.98 – $79,591.50 = | 175,962.39 |
| | | $ 62,812.11 |
| C. | Plus thirteen late charges at $442.18 | 5,748.34 |
| | TOTAL INTEREST CHARGED: | $ 68,560.45 |

II. MAXIMUM INTEREST WHICH COULD HAVE BEEN CHARGED

A. Using formula: {[Balance on principal × Maximum rate of interest (21.15 percent per annum)] ÷ 365 days} × days balance owed.

| DATES | BALANCE | MAXIMUM INTEREST |
|---|---|---:|
| 8/16/84—8/27/84 | $242,054.91 | $ 1,683.11 |
| 8/28/84—2/13/85 | 233,211.41 | 22,972.92 |
| 2/14/85—3/11/85 | 224,367.91 | 3,380.27 |
| 3/12/85—7/15/85 | 197,837.41 | 14,444.29 |
| 7/16/85—8/31/85 | 162,463.41 | 4,424.56 |
| | | $ 46,905.15 |

III. USURIOUS INTEREST

| | |
|---|---:|
| Interest charged – maximum interest which could have been charged = | $ 68,560.45 |
| | −46,905.15 |
| | $ 21,655.30 |

IV. PENALTY OF THREE TIMES USURIOUS INTEREST CHARGED (5069 – 1.06(1)) =

| | |
|---|---:|
| | $ 21,655.30 |
| | x      3 |
| | $ 64,965.90 |

---

**F.** Even if the "interest during rental period" charge could be retroactively applied to the purchase order contracts, those interest charges would not make the contracts usurious. Indeed, while Butler complains that they should be retroactively applied, he does not argue that such retroactive application would make the purchase order contracts usurious.

V. DEDUCT PENALTY FROM OUTSTANDING BALANCE = $162,463.41
−64,965.90

AMOUNT BUTLER OWES HOLT: $ 97,497.51

Thus, Holt shall recover from Butler $97,497.51. Holt may not recover any attorney fees since Butler prevailed on his usury claim. Butler shall recover from Holt attorney fees of $50,000.00 as awarded by the trial court.

As modified, the judgment is affirmed.