**Dario DE LEON et ux., Appellants,**

**v.**

**Cristobal P. ALDRETE, Appellee.**

No. 14422.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 15, 1965.

Rehearing Denied Jan. 12, 1966.

Arturo C. Gonzalez, Del Rio, for appellants.

Montague & Thurmond, Del Rio, for appellee.

CADENA, Justice.

This case involves the rights of a defaulting purchaser under a contract for the sale of land. The parties will be referred to according to the designations they carried in the trial court.

On May 30, 1960, plaintiff, Cristobal P. Aldrete, and defendants, Dario De Leon and wife, Felicitas De Leon, entered into a written contract wherein plaintiff agreed to purchase and defendants agreed to sell a tract of land in the City of Del Rio. The purchase price was $1,500.00, payable in installments according to a schedule which called for the last payment to be made on April 1, 1961. Plaintiff did not make a single payment on time, and on April 1, 1961, when, according to the contract, the full price should have been paid, plaintiff had made payments totalling less than one-half of the purchase price. Thereafter, he made partial payments totalling $350.00. On July 6, 1961, the date of the last payment made by plaintiff, he had paid only $1,070.00, leaving a balance of $430.00 unpaid and overdue since April 1, 1961.

On February 1, 1962, defendants, by general warranty deed, conveyed the land in question to Guillermo Hernandez for a cash consideration of $1,300.00. The case has been tried on the theory that, since the contract between plaintiff and defendants

was unrecorded and since plaintiff did not take possession of the land, Hernandez qualified as a bona fide purchaser and took the land free of any claims which plaintiff might assert under his contract of sale.

The trial court entered judgment for plaintiff in the sum of $1,512.60. This amount represented the total payments which plaintiff had made under the contract, $1,070.00, with interest thereon from February 21, 1962, to the date of judgment, and $250.00 which plaintiff had expended in payment of architect's fees incurred in preparation for the construction of a residence on the land. Defendants contend that there was no evidence to support the judgment. They further assert that, in any event, the trial court erred in allowing plaintiff to recover interest on the installments paid by him from February 21, 1962, to the date of judgment.

### 1. *Plaintiff's Right to Restitution.*

Defendants' theory is that, because of plaintiff's failure to make the payments called for in the contract, they had the right to, and did, "rescind" the contract of sale and that, therefore, plaintiff had no right to recover the payments made by him prior to such "rescission." It is clear that defendants do not contemplate, by the use of the term "rescission," a nullification of the contract ab initio, with consequent rights of full restitution. What defendants assert here is the right of forfeiture.

■ A vendor, after breach of a contract for the sale of land by a purchaser, has the power to terminate the contract, thus ending the purchaser's interest in the land and freeing himself from the obligations imposed on him by such contract. McBride v. Banguss, 65 Tex. 174 (1885); Huddle v. Cleveland, Tex.Civ.App., 297 S.W.2d 737, wr. ref. The conveyance of the land by defendants to Hernandez was an effective exercise by them of their power to terminate the contract. McBride v. Banguss, supra; Whiteside v. Bell, 162 Tex. 411, 347 S.W.2d 568 (1961).

Where a vendor thus exercises the power of termination created in him by the purchaser's default, the question arises as to the right of the defaulting purchaser to obtain restitution of payments made by him prior to such termination. There are literally innumerable cases dealing with this problem and, as might be expected, the factual situations involved in these cases vary greatly. Attempts to state dogmatic rules without considering the factual distinctions reflected in the cases have resulted in much doctrinal confusion. Tucker v. Beam, 343 Ill.App. 290, 98 N.E.2d 871.

What is generally described as the majority rule in this country is that a defaulting purchaser cannot recover any money paid by him under the contract to the vendor even though, as a result of the purchaser's breach, the vendor has abandoned all idea of further performance and retains the money, not for application on the purchase price, but as forfeited. Anno: 31 A.L.R.2d 8, 11–12 (1953).

■ The Texas decisions contain some broad general language which, if accepted at face value, would indicate that our courts are committed to the majority or "forfeiture" rule. Tom v. Wollhoefer, 61 Tex. 277 (1884); Estes v. Browning, 11 Tex. 237 (1853); Magruder v. Poulton, 257 S.W. 533 (Tex.Com.App., 1924). However, it is apparent that the Texas courts have not adopted a dogmatic rule of forfeiture but, instead, have embraced the more salutary rule that the vendor must make restitution if the principles of equity so require. The following language by our Supreme Court in Lipscomb v. Fuqua, 103 Tex. 585, 131 S.W. 1061, 1064, is pertinent:

"Whether the vendor who rescinds an executory contract for the sale of land shall return the purchase money paid depends upon the equities of each case. If it would be inequitable for such rescission to occur without restoration of money paid, then it must be restored."

See also Miller v. Horn, Tex.Civ.App., 149 S.W. 769, no writ; Fink v. Hough, Tex. Civ.App., 153 S.W. 676, wr.ref.; Sparenberg v. Collins, Tex.Civ.App., 63 S.W.2d 241, no writ.

In Lipscomb, the Supreme Court properly denied restitution to the purchaser, since it did not appear that the damages which the vendor might suffer from the breach exceeded the amount which had been paid by the purchaser. Since the damages which the vendor might suffer were uncertain, and since it did not appear that the amount which the vendor sought to retain was unreasonable as an estimate of such damages, the purchaser had shown no equities which would support his claim for restitution.

The approach of our Supreme Court in Lipscomb is best calculated to achieve justice. Dogmatic application of the majority rule leads to indefensibly absurd results. Under that rule of forfeiture the amount of the forfeiture will always and necessarily depend simply on the stage to which the purchaser's performance has progressed, with complete disregard of the amount of damages suffered by the vendor. The surprising result is that a purchaser who pays a substantial portion of the purchase price before defaulting is in a much worse position than the purchaser who pays nothing. In the latter case, the vendor would receive only compensation for his actual losses. In the former case, a strict application of the forfeiture rule would allow the vendor to get much more, in some cases, than compensation for the loss caused him by the purchaser's default. A rule which leads to the result that the purchaser's loss increases as the seriousness of his breach decreases is so unreasonable that it does not deserve serious consideration.

One of the most popular rationalizations of the forfeiture rule is that one should not be permitted to create a cause of action in himself by his own breach of his contractual obligations. See Estes v. Browning, supra, 11 Tex. at 243, where our Supreme Court observed that "it would be an alarming doctrine that parties might violate their contracts because they chose to do so, and make their own infraction the basis for an action for money had and received."

■ This explanation and justification of what is obviously a "harsh and stringent" rule (Tom v. Willhoeffer, supra, 61 Tex. at 281) is singularly unpersuasive. It assumes, erroneously, that a purchaser who defaults would, as a consequence of that act alone, be entitled to recover what he has paid. No one would suppose that the purchaser's breach, standing alone, would have the effect of terminating the contract or the vendor's rights thereunder. It merely creates in the vendor a power to terminate the contract. Until he exercises such power, the vendor, apart from his right to damages, has the remedy of specific performance. If, for some reason, that remedy is unavailable, he may obtain its equivalent through enforcement of his lien (so-called foreclosure of the contract) by sale of the land and application of the proceeds to the unpaid purchase price. Patently, then, the purchaser's breach does not of itself create a cause of action in the purchaser. His right to restitution cannot arise unless and until the vendor elects to reject the remedies the law has provided for obtaining the stipulated price and chooses, instead, to abandon the contract for all purposes except that of retaining the money and enjoying the cake which he had previously eaten.

■ A rule which makes the right of the purchaser depend on the equities of each case leaves room for the consideration of all relevant factors, especially the all-important considerations of the amount which the purchaser has paid and the extent to which the vendor has been injured by the breach. Unless it appears that the amount paid by the purchaser exceeds the injury suffered by the vendor, restitution will not be allowed. In no event will the vendor go uncompensated for his injury.

At least in the absence of a forfeiture clause, the obvious intent of the parties to the contract is that all payments made by the purchaser are to be treated simply and only as payments on the purchase price. Where, as here, the vendor has disabled himself from performing his obligations under the contract, so that it is no longer possible to carry out the intention of the parties by applying the purchaser's payments to the purchase price, it is only equitable to regard the vendor as holding the money paid to the use of the purchaser, subject to allowance of proper damages to the vendor.

In the case before us, plaintiff had paid in excess of 70% of the purchase price. The damages which defendants suffered as a result of plaintiff's breach are definite and ascertainable from the evidence by resort to simple mathematical calculation. Had plaintiff fully performed, defendants would have received $1,500.00 for their land. Because of such breach, they received only $1,300.00. Plaintiff makes no contention that this was not a fair price. Clearly, in order to prevent defendants from suffering as a result of plaintiff's default, it is only necessary to allow them to retain, from the amount paid by plaintiff, the sum of $200.00. To allow them to retain the $1,070.00 paid by plaintiff, after they had received $1,300.00 as a result of their termination of the contract and sale of the land to a third party, would result in a situation where defendants would be unjustly enriched in the amount of $870.00. This result can be justified only if we are prepared to hold that plaintiff must be punished for his breach. Punitive damages are alien to the law of contract. The fundamental principle of our law concerning the liability of one who breaches his contract is the principle of compensation. This principle contemplates that the liability to respond in compensatory, as distinguished from punitive, damages will afford sufficient protection to the innocent party, and this is the only interest, absent extraordinary circumstances which are not present here, which the social welfare demands should be the subject of judicial solicitude. Norris v. Letchworth, 167 Mo.App. 553, 152 S.W. 421.

To restore to plaintiff the amount which he has paid, less the amount required to make defendants whole, will in no way affect the stability of contracts or reward the contract breaker. Plaintiff has lost $200.00 because of his breach. Defendants will have received $1,500.00, which is all they would have realized had plaintiff rendered faithful performance.

From what has been said, it is apparent that the trial court erred in allowing plaintiff to recover $1,070.00, the full amount of the payments he had made. Defendants should have been allowed to retain, as compensation for the damages resulting from plaintiff's breach, the sum of $200.00, allowing plaintiff a recovery of $870.00.

## 2. *Plaintiff's Right to Recover Interest.*

The result of our holding is that, as of February 21, 1962, defendants were holding the amount previously paid by plaintiff, subject to an allowance for their damages, for the use and benefit of plaintiff. The sum due from defendants to plaintiff was sufficiently definite as of that date to enable them to ascertain the amount owed by them. Where the amount due is ascertainable by application of fixed rules of evidence and known standards of value, interest is recoverable from the date of the accrual of the cause of action. Statler Hotels v. Herbert Rosenthal Jewelry Corp., Tex.Civ.App., 351 S.W.2d 579, wr. ref., n.r.e.; Restatement, Restitution, § 356 (1937). Under such circumstances, the purchaser who is entitled to restitution is entitled to interest on the amount due him. Phillips v. Herndon, 78 Tex. 378, 14 S.W. 857 (1890).

Defendants present no point challenging that portion of the judgment which allows

plaintiff to recover the sum of $250.00 for architect's fees.

The judgment of the trial court is modified so as to allow plaintiff to recover the sum of $870.00, with interest thereon at the rate of 6% from February 21, 1962, to March 3, 1963, the date of the judgment below, and, in addition, the sum of $250.00 for architect's fees. As so modified, the judgment of the trial court is affirmed. The costs incurred in this Court are taxed four-fifths against defendants and one-fifth against plaintiff. Rule 448, Texas Rules of Civil Procedure.