M. W. GRANT, Jr. and Lynn R. Lacoss, Appellants,

v.

SHERWOOD SHORES, INC., Appellee.

No. 11879.

Court of Civil Appeals of Texas, Austin.

March 1, 1972.

Lindley, Schroeder & Wells, William L. Schroeder, Killeen, for appellants.

Bowmer, Courtney, Burleson & Ferguson, Bob Burleson, Temple, for appellee.

O'QUINN, Justice.

The controlling issue in this case is whether Sherwood Shores, Inc., as vendor, waived its right to cancel without notice two written executory contracts for the sale of six subdivision lots and to retain as liquidated damages all money paid by appellants, as vendees, prior to cancellation.

M. W. Grant, Jr. and Lynn R. Lacoss, acting together, entered into written contracts with Sherwood Shores, Inc., for the

purchase of two lots, in September of 1966, and four additional lots, in April of 1967. Each contract called for monthly installment payments of $50, after certain initial payments, and the installments under each contract were to be paid on the 20th day of the month.

Each contract contained the following agreement bearing on vendor's option, in event of default by vendees, to cancel the contract and retain as liquidated damages all money previously paid:

"*Time is of the essence in the payment of monthly installments* . . . and in the event of *default in making any of the monthly installments* . . . and *such default continue for Thirty (30) days,* the agreement may, at the option of the Seller . . . be *cancelled without notice* to the Purchaser, and this contract will be at an end and the *money deposited herewith,* as well as *all said monthly payments* made hereon, *may be retained* by Sellers . . . because of such default as *liquidated damages.*" (Emphasis added.)

After the June installment in 1969 became delinquent more than thirty days, Sherwood Shores, on July 23, asserted its right of forfeiture under the two contracts without giving prior notice to appellants. After giving written notice to appellants that the contracts had been terminated, Sherwood Shores shortly thereafter sold the group of four lots, and, in October of 1969, the two lots which were the subject of the first contract were also sold. Appellants brought this lawsuit seeking damages, or, in the alternative, restitution of purchase money paid plus interest.

The case was tried before the court without a jury, and the trial court entered judgment on April 23, 1971, that appellants, as plaintiffs below, take nothing by their suit. We will affirm judgment of the trial court.

■ No findings of fact or conclusions of law were made and filed, and none was requested. We must affirm judgment of the trial court if it can be upheld on any legal theory that finds support in the evidence. Seaman v. Seaman, 425 S.W.2d 339, 341 (Tex.Sup.1968); Bishop v. Bishop, 359 S.W.2d 869, 871 (Tex.Sup.1962).

■ A contract for the sale of land, which by its own terms provides that if the purchaser fails to make installment payments promptly, time being expressly made of the essence, the vendor may at his option terminate the contract and retain the purchase money paid by the purchaser and recover possession of the property, is not an unlawful agreement by reason of such provisions. Baines v. Clinton Park Development Co., 224 S.W.2d 729 (Tex.Civ.App. Galveston 1949, no writ); 59 Tex.Jur.2d, Vendor and Purchaser, secs. 551 et seq.

Appellants contend in this case that the right in the vendor to terminate the contracts and claim a forfeiture was waived by Sherwood Shores because it repeatedly granted indulgence to appellants in allowing installment payments to be made beyond the 20th day of the month and past the end of the thirty-day grace period. Appellants therefore argue that because the right of forfeiture provided under the contracts had been waived, Sherwood Shores was obligated thereafter to make demand for performance and to give notice of its intention to claim a forfeiture if appellants did not then perform.

Appellants undertook to purchase two lots (Nos. 87 and 88) by contract executed in September of 1966. After the initial payments were completed, the monthly installments began with December 20, 1966. Regular monthly installments were met thereafter until July of 1967 when no payment was made. Meanwhile, in April of that year, appellants had made a second contract to purchase four lots (Nos. 304–307), with monthly installments, after initial payments, to begin on the 20th day of August, 1967. After failing to make the July monthly payment on Lots 87 and 88, and with the first monthly installment coming due on the four lots in August, ap-

pellants requested an extension of time in which to meet the $100 installment due on all six lots. On August 16, 1967, Sherwood Shores by letter granted appellants the extension requested, and payment was made August 30.

The office manager for Sherwood Shores testified from records of the company that in November or December of 1967 appellants again requested extension of time, on this occasion to meet the December installment. The extension was granted, and in January of 1968 appellants paid the installments for both December and January.

The records also showed that the December, 1968, payment for November had been received on December 23, apparently three days past the thirty-day grace period. Counsel for the parties agreed that December 23, 1968, fell on Monday. The office manager testified that the company books were not posted on Saturdays and Sundays and that the lots would have been "repossessed" on Monday, the 23rd, if payment had not been received by mail that day. On two occasions in 1968 and once early in 1969 payments by appellants were received by Sherwood Shores from one to three days after the grace period had expired.

The delinquency that brought about the forfeiture in 1969 began in June, when the May payment was not made until June 23. Payment for June was not made on June 20, nor did payment reach Sherwood Shores until the thirty-day grace period had expired in July, at which time the July installment also was past due. In addition to these delinquencies, it is undisputed that appellants had remained delinquent in payment of annual maintenance charges, in the amount of $90, since October of the previous year, although demands for payment had been made by Sherwood Shores, and no extension had been requested or given.

The arrangement between appellants was in the nature of a partnership. Grant and Lacoss owned a restaurant and a beauty salon together, and purchase of the lots from Sherwood Shores was undertaken by them jointly. Grant and Lacoss operated under the business name of Dublyns, a combination of Dub and Lynn, and Lacoss usually had responsibility for making payments on the lots being purchased from Sherwood Shores. Checks were mailed at Killeen, where Grant and Lacoss conduct their businesses, addressed to the principal office of Sherwood Shores at Denison.

Both Grant and Lacoss testified at the trial. It is clear from their testimony that they fully understood the contracts they executed with Sherwood Shores and were aware of the provision under which Sherwood Shores at its option could terminate the contract and claim a forfeiture if any monthly installment should be in default for thirty days. Lacoss testified that he and Grant made no improvements on the lots, and that they did not contract to purchase the lots for homestead purposes, but only as an investment. Lacoss also conceded that payment of $100 per month on the purchase contracts was a reasonable monthly rental charge if they had been renting the six lots from Sherwood Shores, and that appellants had exclusive control and possession of the lots up to the time Sherwood Shores opted to terminate the contracts.

It was affirmatively shown, both by the testimony of appellants and by that of Sherwood Shores' office manager, that Sherwood Shores never at any time agreed to waive its right to terminate the contracts and claim a forfeiture in event of default in payment of the monthly installments continuing for thirty days. Appellants' claim of waiver, as we understand their position, must be based on the conduct of Sherwood Shores in allowing appellants to make late payments on occasions, some of which were beyond the thirty day grace period.

We do not understand either of the appellants by his testimony to claim that he was misled by Sherwood Shores when late payments were accepted, including the few

payments accepted after thirty days from the due date. Lacoss made clear that he understood the right of Sherwood Shores to terminate the contract without notice if Lacoss failed to make payment within thirty days after the 20th of each month, and that by being late thirty days or more he was taking a gamble. Grant admitted that Lacoss handled most of the payments and that during the last six months prior to termination of the contracts in July, 1969, Grant had no communication whatever with Sherwood Shores.

The record shows that shortly after the 20th of each month, if payment had not been received by Sherwood Shores from appellants, written notices were sent to them, usually at intervals of one week, until payment was received. Thus numerous and consistent demands for payment were made by Sherwood Shores throughout the life of the contracts. A total of 76 such notices, advising appellants that payments for specified months were in default and demanding payment, were introduced in evidence. The office manager for Sherwood Shores testified that by examining the notices, or the record books furnished appellants at the beginning of their contracts, appellants could ascertain which monthly installments were in default at any given time.

This is not a lawsuit involving rescission of an agreement in the sense that the party bringing the contract to a termination was undertaking to nullify the agreement *ab initio*. In this case Sherwood Shores asserted a right of forfeiture upon termination of the contracts, pursuant to express provision in the contracts giving the vendor an option to end the contractual relationship rather than pursue some other course, such as suit for specific performance, and to retain as liquidated damages money paid under the contract by purchasers.

■ Sherwood Shores expressly extended time for appellants to make installment payments on two occasions. By these extensions of time Sherwood Shores did not waive its right under the contracts to terminate the agreements, except during the period of such extensions. Lanier v. Faust, 81 Tex. 186, 16 S.W. 994 (1891); Whiteside v. Bell, 162 Tex. 411, 347 S.W. 2d 568 (1961). By accepting other payments beyond thirty days from the due date, at most on three or four occasions, it cannot be said that Sherwood Shores waived its right of termination and claim of forfeiture. Appellants by their own testimony acknowledged they were risking forfeiture if payments were delayed thirty days, that they were never advised by Sherwood Shores they could be late except on the two occasions time was expressly extended, and that they knew Sherwood Shores expected payments to be made on the dates specified in the contracts.

■ There was no waiver by affirmative action of Sherwood Shores, nor by its failure to take timely steps in July of 1969 to terminate the contracts when payments for two months became delinquent, one such installment being delinquent beyond thirty days. See Lanier v. Faust, 16 S.W. 994, 995, col. 2. Mere demand for payments in default, and acceptance of such payments, will not defeat Sherwood Shores' right to terminate the contracts. McMahon v. Thornton, 96 S.W.2d 308 (Tex.Civ.App. El Paso 1936, writ ref.).

■ In considering the trial court's action in denying appellants restitution of purchase payments with interest, we apply the rule that restitution will be made only if the principles of equity so require. The rule was stated by the Supreme Court in Lipscomb v. Fuqua, 103 Tex. 585, 131 S.W. 1061, 1064 (1910), and followed in the decision of the San Antonio Court of Civil Appeals in De Leon v. Aldrete, 398 S.W.2d 160 (Tex.Civ.App. San Antonio 1965, writ ref. n. r. e.).

After examining numerous decisions by Texas courts, the Court stated in *De Leon* that " . . . Texas courts have not adopted a dogmatic rule of forfeiture but, instead, have embraced the more salutary

rule that the vendor must make restitution if the principles of equity so require." (398 S.W.2d 162, col. 2)

■ The right of termination and forfeiture, to which the parties agreed in the contracts before us, is for the benefit of Sherwood Shores as vendor. Appellants' breach made available to Sherwood Shores its right under the contracts to terminate the agreements. Unless it appears that the amount paid by appellants as purchasers exceeds the injury suffered by Sherwood Shores as vendor, restitution will not be allowed, and in no event will the vendor be denied compensation for injury. (398 S.W.2d 163, col. 2)

■ Appellants conceded that the payments they made on the six lots did not exceed a reasonable rental on the lots for the time they had possession and control of the property. Appellants also admitted their knowledge of expenses, including commissions and subdivision improvements, assumed by Sherwood Shores. Appellants had not paid their share of the annual maintenance charges and were in arrears about nine months when the contracts were terminated by Sherwood Shores.

■ There was neither pleading nor proof that the provision in the contract for liquidated damages was the result of fraud, accident or mistake, or that it constituted a penalty. By reason of appellants' failure to make timely payments, and in the absence of any showing that Sherwood Shores was in default under the contracts, the contractual provision authorizing retention of all purchase money must be taken as a stipulation for liquidated damages by reason of appellants' breach of the contracts. Dutton v. Miller, 11 S.W.2d 551, 552 (Tex.Civ.App. Fort Worth 1928, no writ) and cases cited; Smith v. Waite, 424 S.W.2d 691 (Tex.Civ.App. Waco 1968, writ ref. n. r. e.).

We find in considering all the relevant factors that the trial court by implied find-

ings in the judgment properly denied appellants recovery of either damages or restitution. Appellants have failed to make proof of their right to equitable relief from plain and unambiguous provisions of the contracts. Stevenson v. Lohman, 218 S.W.2d 311, 314 (Tex.Civ.App. Beaumont 1949, writ ref.).

The judgment of the trial court is in all things affirmed.

Affirmed.