**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

——————

No. 15-50128

——————

United States Court of Appeals
Fifth Circuit

**FILED**

September 30, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

PATRICK G. MIRE,

Defendant - Appellee

v.

HARBOR AMERICA CENTRAL, INCORPORATED,

Garnishee - Appellant

----------------------------------------------------------------------------------

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

PATRICK G. MIRE,

Defendant - Appellee

v.

HARBOR AMERICA CENTRAL, INCORPORATED,

Defendant - Appellant

No. 15-50128

---

Appeal from the United States District Court
for the Western District of Texas

---

Before WIENER, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Harbor America Central appeals the district court's denial of its motions to release money paid into the court registry and to terminate garnishment. Patrick Mire, a convicted fraudster, is subject to a $10 million restitution order. Harbor America, which had contracted with Mire and his fraudulently run businesses, is subject to a writ of garnishment for that debt, but it asserts that it no longer holds Mire's property as it has terminated the contracts under which it owed him regular payments. Harbor America alleges it was entitled to terminate the contracts based on Mire's fraud and did so by obtaining a judgment in a Texas state court declaring its right to terminate.

We hold that the state court ruling is not binding because the government was not allowed to participate in the proceeding. Considering the question of termination in the first instance, we conclude that Harbor America has lawfully terminated one of the contracts but may or may not have been entitled to terminate the other. We thus remand to the district court for further fact finding on the termination question and to determine any compensation Harbor America owes under any terminated contracts.

## I.

Mire pleaded guilty to conspiracy to commit mail fraud and conspiracy to commit money laundering. *United States v. Mire*, 619 F. App'x 330, 331 (5th Cir. 2015). The convictions resulted from Mire's involvement in companies that contracted to administer payroll and insurance programs for employers. Mire's companies withheld employment taxes from payroll checks issued to the

2

No. 15-50128

clients' employees but failed to deliver the withheld taxes to the IRS and kept them instead. Mire was sentenced to 36 months in prison and ordered to pay $10 million in restitution. *Id.* at 331.

After entry of final judgment, the government notified Harbor America that the government had "a federal tax type lien" on all of Mire's property. *See* 18 U.S.C. § 3613. The government next applied to the district court for a writ of garnishment directed to Harbor America as garnishee, asserting that Harbor America was indebted to Mire or "in possession of [substantial nonexempt] property" of his. *See* 28 U.S.C. § 3205; 18 U.S.C. § 3613. The court issued the writ.

Harbor America answered the writ and acknowledged that it owed "commission payments" to Mire based on two contracts. In the Independent Representative Agreement (IRA), CenterPoint Employee Management LLC, a company Mire owned and used in his frauds, agreed to represent Harbor America on a commission basis in selling and marketing staff leasing services. Through an Asset Purchase Agreement (APA), Harbor America acquired the payroll service contracts held by Centerpoint Outsourcing, LLC, another company Mire owned and used to perpetrate his frauds. In exchange for these agreements, Harbor America agreed to make regular payments as a percentage of its earnings from the clients. The APA generated more income for Mire than the IRA. Taking the month of April 2014 as an example, Harbor America reported that it withheld $5,610.66 in bi-weekly payments due under the IRA and $37,683.85 in monthly payments due under the APA.

The IRA provided that it could "be terminated immediately and all compensation shall cease if [CenterPoint] engages in any clearly illegal business practices." In the APA, Centerpoint represented that it conducted its activities lawfully.

No. 15-50128

In its answer, Harbor America advised that it had initiated a state court declaratory judgment proceeding to terminate the IRA and the APA because of Mire's criminal conviction.  Harbor America did not join the government as a party in the state court action, but the government intervened on the basis of its restitution lien.  The government then removed the state proceeding to federal district court, but that court remanded.[1]  Following remand, the state court granted Harbor America's motion to dismiss the government's intervention.

In June 2014, the government moved in the ongoing garnishment proceeding for an order disposing of the garnished property held by Harbor America.  *See* 28 U.S.C. § 3205(c)(7).  Harbor America opposed the motion, contending that a determination of its rights and obligations with regard to Mire was properly at issue in the state court declaratory judgment action.  The district court ruled in favor of the government.  It determined that Harbor America had retained $43,294.51 due Mire under the IRA and the APA as of the date of the writ and that all commissions were nonexempt property of Mire's that the government was entitled to garnish.  Consequently, Harbor America was ordered to pay the government all property in its possession belonging to Mire.  The clerk was ordered to retain the monies collected pending disposition of Mire's appeal of his conviction.  The court also ordered that the garnishment continue until terminated.  *See* 28 U.S.C. § 3205(c)(10).

The state court granted summary judgment in favor of Harbor America on its claim for a declaration that it had the right to terminate the IRA and the APA.  Afterward, in November 2014, Harbor America notified Mire in writing

---

[1] The action was removed to the District Court for the Southern District of Texas, not the District Court for the Western District—the court where Mire was convicted, the garnishment proceedings were ongoing, and this appeal originates.

No. 15-50128

of its termination of the IRA and the APA, "[p]ursuant to the IRA, the APA, the Texas Declaratory Judgment Act, and the [state] court's rulings."

In December 2014, Harbor America moved the federal court to release to it $312,838.37 that it had deposited in the court registry under protest as garnishee.  The district court denied the motion and ordered Harbor America to comply with the writ of garnishment and the disposition order.  Harbor America moved to quash the disposition order on the basis that a condition to quash had been met, namely that the IRA and the APA had been terminated. *See* 28 U.S.C. § 3205(c)(10)(B) (providing for expiration of a writ when the debtor's property in the garnishee's possession is exhausted).  The district court did not rule on this motion but ordered Harbor America to show cause why it should not be held in contempt and again directed it to comply with the writ of garnishment and the disposition order.  Harbor America appealed.

## II.

### A.

We review garnishment orders and ancillary decisions for abuse of discretion. *United States v. Elashi*, 789 F.3d 547, 548 (5th Cir. 2015); *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010).  Supporting findings of fact are reviewed for clear error, and supporting conclusions of law are reviewed de novo. *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 423 (5th Cir. 2006).

Federal law makes "a restitution order enforceable to the same extent as a tax lien." *United States v. Loftis*, 607 F.3d 173, 179 n.7 (5th Cir. 2010) (citing 18 U.S.C. § 3613(c)).  The government may use the garnishment provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001–3308, to collect a restitution obligation imposed by a judgment of conviction. *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002).  Under the Act, a court may garnish "property (including nonexempt disposable earnings) in which the

No. 15-50128

debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor."   28 U.S.C. § 3205(a).   "Property" for these purposes includes the present and future right to receive payments under a contract.  *See* 28 U.S.C. § 3002(12).

Although federal law thus creates a lien on property, it is state law that "defines the property interests to which the lien attaches." *Elashi*, 789 F.3d at 548–49.  In this context, federal law "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Craft*, 535 U.S. 277, 278 (2002).

**B.**

Harbor America argues that it terminated both the IRA and the APA on April 22, 2014 (when it filed the state court action), that Texas contract law entitled it to terminate those agreements when it did, and that the state declaratory judgment conclusively decided this issue in its favor.  It reasons that because state law undoubtedly defines the property interest that is subject to the government's lien (in this case a right to receive payments under two contracts), Mire's property evaporated on April 22, 2014, when the contracts were allegedly terminated.

We first consider the effect of the state court judgment.  The government contends that it is not bound by the state court's determination that Harbor America could terminate the IRA and APA because that court refused to allow it to intervene.  It relies on the following provision of the Internal Revenue Code:

> If the United States is not a party to a civil action or suit, the United States may intervene in such action or suit to assert any lien arising under this title [the Internal Revenue Code] on the property which is the subject of such action or suit . . . . In any case in which the application of the United States to intervene is

6

denied, the adjudication in such civil action or suit shall have no effect upon such lien.

26 U.S.C. § 7424.

The order of restitution in this case arises under Title 18.  On its face, section 7424 applies only to liens arising under Title 26, the Internal Revenue Code.  An order of restitution, however, "is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code . . . ."  18 U.S.C. § 3613(c).  No circuit has addressed the interaction of these two sections, but we read them together to require that the government be allowed to intervene in an action directed at property that is subject to an order of restitution.  If the government is not allowed to intervene, the subsequent adjudication cannot prevent the government from contesting the status of the subject property in a collateral proceeding.

Our conclusion follows from the language of the text: section 3613 says that an order of restitution is to be treated as if it were a tax lien; section 7424 gives the government a right to intervene in any action directed at property against which it holds a tax lien; and section 7424 further provides that when that right is violated, the resulting adjudication has "no effect upon such lien." The statute reflects that the government's status as a lienholder makes it the party with an interest in contesting any dispute about the property subject to the lien. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 725 (1985).

Because the government was not permitted to intervene in the Texas action that produced the declaratory judgment upon which Harbor America relies, Harbor America cannot use it to forestall the government from litigating as an original matter whether Harbor America was entitled to terminate the contracts.  Harbor America protests that this holding is at odds with the principle that state law defines property interests that are subject to federal

liens.  But 26 U.S.C. § 7424 does not displace state law, it merely provides that the government's interest as a lienholder allows it a say in disputes deciding the extent of those interests under state law.   We thus proceed to determine, in light of the governing state law, whether Harbor America could—and if it could, when it did—terminate the agreements it had with Mire's companies.

## C.

The IRA states that it "may be terminated immediately and all compensation shall cease if [Centerpoint] engages in any clearly illegal business practices."  It is undisputed that Centerpoint was engaged in criminal business practices.  Under Texas contract law, termination provisions such as this are generally given effect without regard to questions of material breach. *See Woodard v. Gen. Motors Corp.*, 298 F.2d 121, 126 (5th Cir. 1962); *Capcor at KirbyMain, L.L.C. v. Moody Nat. Kirby Houston S, L.L.C,* 2014 WL 982858, at *10 (Tex. App.—Houston [1st Dist.] Mar. 13, 2014, no pet.) (holding that jury instruction on material breach was not necessary when contract contained termination provision); *Home Reader Serv., Inc. v. Grappi*, 446 S.W.2d 95, 99 (Tex. Civ. App.—Dallas 1969, writ ref'd n.r.e.) ("A contract provision for termination by either party when fairly entered into, will be enforced if not contrary to equity and good conscience." (internal quotation marks omitted)). It follows that Harbor America had the right to terminate the IRA because of Centerpoint's criminal activities.

Harbor America asserts that it terminated the IRA on April 22, 2014, the date it filed its state court action.  Its state court petition, however, did not attempt to terminate the IRA and APA but sought a declaration that the contracts permitted it to do so.  It was only on November 24, 2014, that Harbor America sent a termination letter to Mire.  The record does not indicate that Harbor America took any action to terminate the IRA, as opposed to seeking a

No. 15-50128

declaration that it could terminate it, until it sent that letter.  Harbor America thus did not terminate the IRA until November 24, 2014.

Because Harbor America can and did terminate the IRA, it no longer owed commission payments under that services agreement to Mire as of November 24, 2014.  Successful termination of the IRA halted accumulation of Mire's property interest in the commission payments and thus in the property available for garnishment.   The district court erred in denying Harbor America's motion to quash and motion to release funds without taking into account the effect of the termination letter on Mire's interest in the IRA.  On remand, it will be necessary for the court to calculate the sum of commission payments that accrued prior to November 24, 2014, to ascertain the correct amount owed to the government.

**D.**

Both the question of termination and, in the event of termination, compensation are more difficult when it comes to the APA.  Unlike the IRA, the APA does not authorize Harbor America to terminate the agreement for illegal business practices.  The APA does, however, include a warranty that Mire's company had "conducted its operations in accordance with all applicable law."

In the absence of a clause authorizing Harbor America to terminate the APA for breach of the lawful-conduct warranty, its ability to terminate hinges on whether the breach was material.  *See Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 755 (Tex. 2013) ("Generally, one party's breach does not excuse the other's performance unless the breach is material.").  Texas courts follow the framework outlined in the Restatement to determine whether a breach is material.  *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004) (per curiam) (citing RESTATEMENT (SECOND) OF CONTRACTS §241 (1981)).  The analysis prescribed by the Restatement includes consideration of

factors outside the text of the contract that bear on the real expectations, benefits, and injuries to the parties. For example, courts are to consider "the extent to which the injured party will be deprived of the benefit which he reasonably expected." RESTATEMENT, *supra*, § 241(a). Materiality is accordingly an issue of fact under Texas law. *Briargrove Shopping Ctr. Joint Venture v. Vilar, Inc.*, 647 S.W.2d 329, 333 (Tex. App.—Houston [1st Dist.] 1982, no writ).

There is another important difference between the APA and IRA that affects the question of compensation in the event Harbor America was entitled to terminate the APA. As their titles disclose, the APA is a sales agreement and the IRA is a representation agreement for ongoing services. That makes the question of compensation straightforward for the IRA: as of the date of termination, Harbor America owes nothing else on the contract as it no longer receives any services under the contract. Under the APA, however, Harbor America has already received everything it was due: the valuable contracts Mire's company had with employers to provide payroll services. But Mire has not. The APA gives him a right to ongoing payments—fifty percent of Harbor America's monthly earnings from the book of business it received. Given this feature of the APA, we requested supplemental briefing from the parties regarding the fate of these assets should Harbor America terminate the APA.

In the event of a material breach, Harbor America can of course undo the entire relationship created by the contract by no longer providing services for the clients it obtained. That is not, however, its current plan. Harbor America contends that a termination would allow it to keep the clients but no longer have to pay any compensation to Mire. Harbor America's desire for a windfall from Mire's criminality ignores the principles of restitution expressed in the Restatement that govern the issue:

10

> [I]f a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach.

RESTATEMENT, *supra*, § 374(1).  The Restatement accurately reflects the law in Texas on this point.  *See, e.g.*, *Lipscomb v. Fuqua*, 131 S.W. 1061, 1064 (Tex. 1910); *Grant v. Sherwood Shores, Inc.*, 477 S.W.2d 667, 671–72 (Tex. Civ. App.—Austin 1972, no writ); *De Leon v. Aldrete*, 398 S.W.2d 160, 162–63 (Tex. Civ. App.—San Antonio 1965, writ ref'd n.r.e.).  Under a terminated APA in which Harbor America retains the clients that agreement gave it, Mire (in whose shoes the government now stands) would be entitled to restitution.  A court would calculate that amount by comparing the benefit conferred and the loss caused by the breaching party.

Given the absence of relevant evidence and the fact–intensive nature of the materiality and restitution inquiries, we are unable to determine whether Harbor America continues to hold Mire's garnished property under the APA. Although the district court correctly reasoned that the state court decision obtained by Harbor America had no effect on the government's lien, it thus should also have considered whether the APA was nonetheless lawfully terminated under Texas law when Harbor America sent the November 2014 letter purporting to terminate the agreement.  Accordingly, remand is necessary so that the district court may receive and consider evidence bearing on materiality of breach and, if need be, the propriety of restitution.

* * *

In summary, we hold that Harbor America rightly terminated the IRA on November 24, 2014.  On remand, the district court must calculate the amount of commission payments accruing to Mire before this date; these

payments were properly garnished and are now due to the government. Any payments that Harbor America would have made to Mire under the IRA subsequent to that date are no longer owed to him, subject to garnishment, or due to the government.

We reach no conclusion regarding whether Harbor America has rightly terminated the APA. The district court on remand should allow the parties to present evidence concerning whether violation of the warranty of lawful conduct was a material breach and Mire's right to restitution of the client service agreements should the breach be deemed material. Any right Mire has to restitution is of course subject to garnishment along with the rest of his nonexempt property.

The judgment is VACATED and the case REMANDED for further proceedings consistent with this opinion.