# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50223

United States Court of Appeals
Fifth Circuit

**FILED**

February 14, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ROBERT WARREN SCULLY,
also known as Robert Scully,
also known as Robert W. Scully

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before KING, JONES, and ELROD, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Robert Warren Scully was convicted of conspiracy to defraud the United States, conspiracy to commit wire fraud, and aiding and abetting a wire fraud scheme. 18 U.S.C. §§ 371, 1343, 1349. The district court later granted the Government's motion to restrain Scully's assets to preserve them for restitution and forfeiture. Scully was then sentenced and ordered to pay $1,206,539.94 in restitution. *See* 18 U.S.C. § 3613(c). The district court denied Scully's motion to partially vacate its earlier restraining order on his assets. Because the Sixth Amendment does not entitle Scully to use funds subject to

No. 17-50223

the Government's post-conviction forfeiture lien to pay for appellate counsel of his choice, this court AFFIRMS.

## BACKGROUND

Robert Warren Scully was convicted of conspiracy to defraud the United States, conspiracy to commit wire fraud, and aiding and abetting a wire fraud scheme on November 25, 2015. The Government filed a motion to restrain Scully's assets on July 7, 2016; the motion was granted that same day. The motion specifically mentioned over $220,000 from the sale of a home in Florida. The Government moved to restrain these proceeds (and Scully's other assets) to preserve them for Scully's expected restitution obligations. The district court sentenced Scully to 180 months of imprisonment and ordered him to pay $1,206,539.94 in restitution, a $5,000 fine, and a $500 special assessment. The district court entered judgment on November 29, 2016.

Scully filed his notice of appeal for his conviction and sentence in early December 2016. He then filed a motion to partially vacate the July 7, 2016 restraining order so he could use $65,000 of his house proceeds to cover attorney and transcript fees for his appeal. The district court denied Scully's motion. Scully filed a timely notice of appeal.

## DISCUSSION

On appeal, Scully contends that the district court reversibly erred by denying his motion to partially vacate the restraining order as to the funds from the sale of his home in Florida. He argues that the proceeds are "untainted" because they are not fruits or instruments of crime, and the district court's continued restraint on his untainted assets denies his Sixth Amendment right to counsel of his choice on appeal.

This court has jurisdiction over the instant appeal pursuant to 28 U.S.C. § 1292(a)(1). This court reviews the district court's denial for abuse of

discretion. *Castillo v. Cameron Cty., Tex.*, 238 F.3d 339, 347 (5th Cir. 2001). The district court's legal conclusions are reviewed *de novo. Id.*

Appellant argues that *United States v. Floyd*, 992 F.2d 498 (5th Cir. 1993), and *Luis v. United States*, 136 S. Ct. 1083 (2016), mandate reversal of the district court's order. A review of Supreme Court precedent and the *Floyd* opinion shows that Appellant has no right to use the funds at issue to pay for appellate counsel.

The Supreme Court's opinion in *Caplin & Drysdale, Chartered v. United States* lays out important principles for this court's analysis. The defendant there was charged with violations of the RICO statutes and their forfeiture provision. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 619-21, 109 S. Ct. 2646, 2649-50 (1989). The Court held that a defendant is not entitled to use tainted funds forfeited after conviction to pay for attorneys' fees from trial. *See id.* The Court held that "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Id.* at 626, 109 S. Ct. at 2652. Notably, under 21 U.S.C. § 853(c), which codified the "relation-back" doctrine, the Government had a property interest in the assets at issue from "the time of the criminal act giving rise to forfeiture." *Id.* at 627, 109 S. Ct. at 2653. The Court held that the Government's interest in recovering all forfeitable assets overrode any Sixth Amendment right criminal defendants may have to use forfeitable assets for attorneys' fees. *Id.* at 631, 109 S. Ct. at 2655. Therefore, the Court "reject[ed] petitioner's claim of a Sixth Amendment right of criminal defendants to use assets that are the Government's—assets adjudged

forfeitable . . . to pay attorneys' fees, merely because those assets are in their possession." *Id.* at 632, 109 S. Ct. at 2656.[1]

The Court in *Luis* addressed whether the Sixth Amendment bars the Government from restraining a defendant's untainted assets before trial. Similar to Scully, the defendant in *Luis* was indicted for violations of 18 U.S.C. §§ 371 & 1349. 136 S. Ct. at 1087. The Government sought a pretrial restraining order pursuant to 18 U.S.C. § 1345(a)(2) to prevent dissipation of any of Luis's assets that might later become subject to forfeiture. *Id.* at 1087-88. The Court noted that the "nature of the assets at issue" differed from those in *Monsanto* and *Caplin & Drysdale*. *Id.* at 1089-90. Notably, Luis's assets were untainted (not traceable to the crimes charged) and unquestionably belonged to her preceding a judgment of conviction, whereas the assets in *Monsanto* and *Caplin & Drysdale*, were tainted in a way that rendered defendants' ownership interest imperfect under the "relation-back" forfeiture statute. *Id.* at 1090. The Court observed that its prior decisions established "that whether property is forfeitable or subject to pretrial restraint under Congress' scheme is a nuanced inquiry that very much depends on who has the superior interest in the property at issue." *Id.* at 1091.

Luis owned the assets, while the Government's interest in them was entirely contingent on a conviction at some later time. *Id.* at 1092-93. Therefore, the Court held that Luis's interest in her untainted property and her Sixth Amendment right to assistance of counsel before trial outweighed

---

[1] The Supreme Court decided another forfeiture case, *United States v. Monsanto*, on the same day *Caplin & Drysdale* was announced. 491 U.S. 600, 109 S. Ct. 2657 (1989). *Monsanto* involved the pretrial restraint of the alleged proceeds from the defendant's drug enterprise. *Id.* at 602, 109 S. Ct. at 2659. The Court held that there was no constitutional issue with a "restraint on [the defendant's] property to protect its 'appearance' at trial and protect the community's interest in full recovery of any ill-gotten gains." *Id.* at 616. 109 S. Ct. at 2666.

"the Government's contingent interest in securing its punishment of choice . . . as well as the victims' interest in securing restitution . . . ." *Id.* at 1093. The Court acknowledged that the Government's interest, while important, "would seem to lie somewhat further from the heart of a fair, effective criminal justice system" than the defendant's Sixth Amendment right. *Id.* Accordingly, the Court held that Luis had "a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel" pretrial. *Id.* at 1096.

This court's precedent is in line with *Luis*. In *United States v. Floyd*, this court held only that a district court erred in issuing a "*pretrial* restraining order freezing certain . . . assets that were untainted by the alleged criminal offenses." 922 F.2d at 499 (emphasis added).

*Caplin & Drysdale*, *Monsanto*, *Luis*, and *Floyd* compel the conclusion that Scully may not use the house proceeds to pay for appellate counsel and fees. *Caplin & Drysdale* addressed restraint of tainted assets postconviction, while *Luis* and *Floyd* each addressed the pretrial restraint of untainted assets. Moreover, Scully is not appealing the district court's initial order restraining his untainted assets (which occurred after trial, but before entry of judgment), but rather, the district court's denial of his post-conviction motion to vacate the restraining order.

More than six months passed between the district court's initial restraint of Scully's assets and his motion to vacate the order. Two legally significant events occurred during this time. First, the district court entered judgment against Scully, which included restitution. The district court's entry of judgment triggered the second event, a statutory lien against *all* of Scully's property.

> [A]n order of restitution made pursuant to [relevant sections] of this title, is a lien in favor of the United States on all

property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986. The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated . . . .

18 U.S.C. § 3613(c).

Precedent strongly suggests that the Government's lien against the untainted funds outweighs any Sixth Amendment right Scully has to them. *See Caplin & Drysdale*, 491 U.S. at 631, 109 S. Ct. at 2655 (holding that the "strong governmental interest in obtaining full recovery of all forfeitable assets . . . overrides any Sixth Amendment interest in permitting criminals to use [those assets] to pay for their defense" lest there be "interference with a defendant's Sixth Amendment rights whenever the Government freezes or takes some property in a defendant's possession before, during, or after a criminal trial."). The Court held that allowing a defendant to claim "a share of the forfeited assets postconviction" would support the untenable suggestion that "the Government could never impose a burden on assets within a defendant's control that could be used to pay a lawyer." *Id.*

The instant case is more analogous to *Caplin & Drysdale* than *Luis*. Unlike the defendant in *Luis*, Appellant challenges the continued restraint of his funds *after* conviction and entry of judgment. *Luis* turned on the balance between Luis's property interest in her untainted assets and the Government's interest in her untainted assets, which was no more than a contingent interest hinging on the outcome at trial. *Luis*, 136 S. Ct. at 1092-93. At the time the district court denied Scully's motion to vacate its restraining order, the

No. 17-50223

Government unquestionably had an interest in *all* of Scully's property because of the lien arising under 18 U.S.C. § 3613(c).[2]

The Government's lien on Scully's funds is superior to Scully's alleged Sixth Amendment interest in using them to pay appellate counsel. *Caplin & Drysdale*, *Luis*, and section 3613(c) dictate that Scully no longer has any equity interest in the untainted funds he wishes to use for appellate counsel.[3] He has no Sixth Amendment entitlement to use the Government's money to pay for appellate counsel, "even if those funds are the only way that [he] will be able to retain the attorney of his choice." *Caplin & Drysdale*, 491 U.S. at 626, 109 S. Ct. at 2652. Further, it is established that a defendant is not entitled to "representation by an attorney he cannot afford." *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988). Scully does have a constitutional right to be represented by counsel for his first appeal of right, and court-appointed counsel are readily available if he qualifies as indigent. *See* 18 U.S.C. § 3006A.

For all these reasons, the Sixth Amendment does not entitle Scully to use funds subject to the Government's forfeiture lien to pay for appellate counsel of his choice. **AFFIRMED**.

---

[2] *Floyd* is similarly distinguishable, as that defendant appealed a pretrial restraining order freezing untainted assets before entry of judgment. *See Floyd*, 992 F.2d at 498-99.

[3] The court notes that all nine members of the Supreme Court have not disclaimed the Government's right to post-conviction forfeiture. *See Luis*, 136 S. Ct. at 1091-92; *id.* at 1099 (Thomas, J., concurring) ("[F]or *in personam* criminal forfeitures like that at issue here, any interference with a defendant's property traditionally required a conviction. Forfeiture was 'a part, or at least a consequence, of the judgment of conviction.'") (citation omitted); *id.* at 1106 (Kennedy, J., dissenting) ("The government does not own property subject to forfeiture, whether tainted or untainted, until the Government wins a judgment of forfeiture or the defendant is convicted."); *id.* at 1112 (Kagan, J., dissenting) ("Following conviction, [forfeitable] assets belong to the Government, and '[t]here is no constitutional principle that gives one person the right to give another's property to a third party.'") (citation omitted).

No. 17-50223

JENNIFER WALKER ELROD, Circuit Judge, concurring in the judgment:

Because a valid statutory lien for restitution attached upon entry of judgment as to all of Scully's property, tainted and untainted, I agree that the district court did not err in denying Scully's motion to partially vacate its earlier order restraining his assets. I write separately to emphasize that the dispositive issue is not that the restraint of Scully's untainted assets was post-conviction rather than pre-trial, but rather that Scully's motion came after a valid lien attached to all of his untainted assets post-judgment. Had Scully challenged the restraint of his untainted funds before the lien attached at the time of judgment, we would confront a much more difficult constitutional question: whether a post-conviction but pre-judgment restraint of untainted assets violates the Sixth Amendment. Because Scully did not challenge the pre-judgment restraint of his assets until after judgment was entered and the lien attached, the inquiry is a relatively straightforward one.

I.

Under the Mandatory Victim Restitution Act (MVRA), the government may enforce restitution orders in the same way that it enforces fines and by any other available means. 18 U.S.C. § 3664(m)(1)(A)(i)–(ii). Moreover, under 18 U.S.C. § 3613(a), the government may collect criminal fines and restitution according to the practices and procedures for enforcing a civil judgment under federal or state law. *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002) (holding that the MVRA authorizes the government to garnish accounts for restitution to be paid to private individuals). In practice, this means that "[t]he government may use the garnishment provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001–3308, to collect a restitution obligation imposed by a judgment of conviction." *United States v. Mire*, 838 F.3d 621, 626 (5th Cir. 2016) (holding that the government must be allowed to

8

intervene in an action concerning property that is subject to an order of restitution).

A restitution order may be enforced to the same extent as a tax lien. *Id.* at 625. In establishing tax liens, Congress used broad language so as "to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985) (holding that the IRS may place a lien on joint bank accounts for delinquent federal income taxes owed by only one of the persons whose name is on the joint account). In enforcing a restitution order, a court may garnish "property . . . in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." *Mire*, 838 F.3d at 626 (quoting 28 U.S.C. § 3205(a)). The expansive definition of property applicable in this restitution context includes "any present or future interest, whether legal or equitable, in real, personal . . . , or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts))." 28 U.S.C. § 3002(12); *see Mire*, 838 F.3d at 626 (applying this definition of property in the context of a restitution order under 18 U.S.C. § 3613).

"Although federal law thus creates a lien on property, it is state law that 'defines the property interests to which the lien attaches.'" *Mire*, 838 F.3d at 626 (citation omitted). "[T]he consensus across jurisdictions is that 'property held in an attorney's client trust account belongs to the client.'" *In re Kappa Dev. & Gen. Contracting Inc.*, No. 17-51155, 2017 WL 4990438, at *3 (Bankr. S.D. Miss. Oct. 31, 2017) (citation omitted). Texas Disciplinary Rule of Professional Conduct 1.14 supports this conclusion, as it states that a lawyer shall hold in a trust account "funds and other property *belonging in whole or in part to clients or third persons* that are in a lawyer's possession in connection

with a representation." (emphasis added).  Accordingly, a statutory lien placed on a defendant's property under 18 U.S.C. § 3613 attaches to the defendant's assets placed in an attorney's client trust account.

Here, Scully sold a house in Florida, and over $220,000 of the sale proceeds were placed in his attorney's client trust account before the district court issued a restraining order prohibiting him from transferring or dissipating the funds.  The government does not contest that the proceeds from the sale of the home are assets untainted by crime.  However, Scully did not move to partially vacate the order restraining the untainted assets from the Florida house sale until approximately two months after sentencing and entry of judgment.  Upon entry of judgment, a lien arose in favor of the United States on all Scully's property.  18 U.S.C. § 3613(c).  The statutory lien operates pursuant to the MVRA, which Congress has indicated should be aggressively enforced.  *Phillips*, 303 F.3d at 551.  Thus, the money placed in the trust account properly became subject to a statutory lien once the district court sentenced Scully and entered judgment.[1]

The problem for Scully is that he is appealing a denial of a motion that he filed post-judgment.  The Supreme Court has rejected the proposition that there is "an interference with a defendant's Sixth Amendment rights whenever the Government freezes or takes some property in a defendant's possession before, during, or after a criminal trial," noting that IRS "seizures of assets to secure potential tax liabilities . . . may impair a defendant's ability to retain counsel" but are nevertheless constitutional.  *Caplin & Drysdale, Chartered v.*

---

[1] Scully does not contest the district court's authority to restrain at least some of his untainted assets post-conviction but pre-judgment, stating at oral argument that the government has a pre-sentencing interest in preserving funds for payment.  Scully contests the restraining order only to the extent it impacted his right to appeal, and he seeks to vacate the order only as to the $65,000 allegedly needed for attorney's fees and costs associated with his appeal.

No. 17-50223

*United States*, 491 U.S. 617, 631 (1989) (holding that a federal drug forfeiture statute does not violate the Sixth Amendment even though it provides no exemption for tainted assets that a defendant wishes to use to hire an attorney).

Had Scully transferred some of the proceeds from the Florida house sale to his attorney of choice after conviction but before entry of judgment or restraint of those assets, the government (as it conceded at oral argument) arguably would have had no right to obtain a lien on those funds under 18 U.S.C. § 3613.[2]  Had Scully challenged the restraining order prior to entry of judgment, he would be in a much stronger position to argue that his Sixth Amendment rights outweighed the government's interest in preserving funds to satisfy an expected order of restitution.  However, in light of the statutory lien that attached upon entry of judgment to all Scully's property—tainted and untainted—and in light of the statutes and precedent indicating that the lien attaches to funds in an attorney's client trust account, the district court did not err in denying Scully's post-judgment motion.

## II.

"It is settled that the Sixth Amendment right to counsel includes the right to counsel on appeal and that this right does not depend upon a request." *Crawford v. Beto*, 383 F.2d 604, 605 (5th Cir. 1967) (holding that appellant was deprived of his constitutional right to counsel on appeal when the trial court denied his request for appointed counsel).[3]  In addition, the Supreme Court has stated that "[t]he right to select counsel of one's choice . . . has never been derived from the Sixth Amendment's purpose of ensuring a fair trial.  It has

---

[2] Moreover, at oral argument, defense counsel admitted that he could have taken a larger retainer in advance to cover the cost of trial and appeal.

[3] We agree with the majority opinion that Scully has "a constitutional right to be represented by counsel for his first appeal of right" and that "court-appointed counsel are readily available if he qualifies as indigent."

been regarded as the root meaning of the constitutional guarantee." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 147–48 (2006) (footnote omitted) (considering "whether a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction").

Whether there is a Sixth Amendment right in the restitution context to use untainted funds to pay for appellate counsel of choice prior to entry of judgment is a thorny question.[4] The majority opinion correctly relies on *Luis v. United States* for the proposition that "whether property is 'forfeitable' or subject to pretrial restraint under Congress' scheme is a nuanced inquiry that very much depends on who has the superior interest in the property at issue." *See Luis v. United States*, 136 S. Ct. 1083, 1091 (2016).

As the plurality noted in *Luis*, the distinction between tainted and untainted property is not a mere "technicality." *Luis*, 136 S. Ct. at 1091. Rather, "[i]t is the difference between what is yours and what is mine." *Id.*[5] While *Luis* did not concern a post-conviction restraint of assets, its central distinction between tainted and untainted property arguably remains relevant after conviction but before entry of judgment. *See id.* at 1087 (holding that a pre-trial restraint of a defendant's untainted assets needed to retain counsel of choice violates the Sixth Amendment). Our decision in *United States v. Floyd* rejected the idea that the government "has the power to seize property that is not evidence of a crime nor the fruits of a crime." 992 F.2d 498, 502 (5th Cir. 1993). Neither *Caplin* nor *United States v. Monsanto* says otherwise, as both

---

[4] Because of the potential Sixth Amendment implications, district courts may wish to exercise caution in entering orders restraining untainted assets after conviction but before entry of judgment.

[5] The majority opinion refers to the untainted assets at issue here as the "Government's money." While this may be merely shorthand, I would point out that Scully's assets were held in trust and subject to an order of restitution for victims only after entry of judgment.

involved tainted, not untainted, assets.  *See Caplin*, 491 U.S. at 631; *United States v. Monsanto*, 491 U.S. 600, 602–03 (1989).

As noted above, the statutory lien under 18 U.S.C. § 3613 does not arise until entry of judgment.  The entry of final judgment is not a mere formality. *See Sherri A.D. v. Kirby*, 975 F.2d 193, 202 (5th Cir. 1992) (footnote omitted) ("Because we do not regard the magistrate judge's delay in entering a final judgment to be a mere formality, but an important limit to appellate jurisdiction under 28 U.S.C. § 1291, we cannot treat the order from which plaintiff appeals 'as if' it were a final judgment.").  Scully's situation highlights the importance of the distinction between conviction and judgment: A jury found Scully guilty in November 2015, but the district court did not impose the approximately $1.2 million order of restitution until November 2016.  "There is a constitutionally significant distinction between a trial of the elements of an offense and the selection of an appropriate penalty from an available range once guilt has been determined . . . ."  *United States v. Fields*, 483 F.3d 313, 333 n.22 (5th Cir. 2007).

The Sixth Amendment's text and the common-law principles informing it support a general distinction between pre-conviction and post-conviction in the forfeiture context.  *See Luis*, 136 S. Ct. at 1099 (Thomas, J., concurring in the judgment) (discussing the longstanding common-law rule "against restraining a criminal defendant's untainted property before conviction").  This common-law distinction reinforces rather than undermines the distinction between pre-judgment and post-judgment stages of conviction.  "It is well known, that at the common law, in many cases of felonies, the party forfeited his goods and chattels to the crown.  The forfeiture was a part, or at least a consequence, of the *judgment of conviction*."  *Luis*, 136 S. Ct. at 1094 (emphasis added) (quoting *The Palmyra*, 12 Wheat. 1, 14 (1827) (Story, J.)).  "The common law thus offers an administrable line: A criminal defendant's untainted assets

are protected from Government interference before trial *and judgment*." *Luis*, 136 S. Ct. at 1101 (Thomas, J., concurring in the judgment) (emphasis added).[6]

Here, the district court restrained untainted assets from the Florida house sale in July 2016 but did not enter judgment until November 2016. While Scully failed to challenge the restraint until after the lien properly attached to his assets, a restraint of untainted funds after conviction but before sentencing and entry of judgment implicates Sixth Amendment concerns. While I would affirm the district court's denial of Scully's post-judgment motion, I would do so because the statutory lien arose upon entry of judgment and because our precedents indicate that once the lien arises the government can reach funds in an attorney's client trust account.

---

[6] If the common law did not always speak specifically of the *judgment* of conviction as being the critical point for commencing forfeiture, this generality of language finds explanation in the historical context. "For much of English history, and for most of the colonial period in the United States, the criminal justice system relied heavily on the death penalty." Erik Lillquist, *The Puzzling Return of Jury Sentencing: Misgivings About Apprendi*, 82 N.C. L. Rev. 621, 628–29 (2004). "[J]uries, in conjunction with judges, made the most important sentencing decision: whether a particular felony defendant should be sentenced to death or receive some alternative punishment." *Id.* at 629. Thus, a common-law emphasis on the different forfeiture consequences that attach post-conviction versus pre-conviction should be read in terms of this historical context, when it often would have made little sense to draw distinctions between the points of conviction, sentencing, and entry of judgment.